**Robert MONTGOMERY, Appellant–Third–Party Defendant and Garnishee Defendant,**

**v.**

**G. Raymond TRISLER, Appellee–Defendant, Third–Party Plaintiff and Judgment Creditor.**

No. 73A01–0203–CV–103.

Court of Appeals of Indiana.

July 25, 2002.

John D. Raikos, Indianapolis, IN, Attorney for Appellant.

Michael E. Simmons, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

In 1987, Executive Builders filed a lawsuit against G. Raymond Trisler ("Trisler") for intentional interference with business. Trisler denied all allegations and proceeded to file a counterclaim against Executive Builders along with a third-party seven-count complaint against Robert and Dolores Montgomery, who were owners of Executive Builders. Trisler sought damages for defamation, invasion of privacy, abuse of process and frivolous litigation. After a jury trial, the jury entered a judgment in favor of Trisler, and while Executive Builders, Dolores, and Robert were all ordered to pay certain compensatory damages to Trisler in varying amounts, only Robert was ordered to pay 1.6 million dollars in punitive damages. Robert appealed and our court affirmed the judgment of the trial court.[1]

After Trisler was unable to collect a portion of the judgment, he filed a motion for proceedings supplemental. A hearing was held on the motion, and the trial court entered several orders of garnishment against various garnishee-defendants ordering them to produce documentation of any of Robert's property held by the garnishee-defendant or any indebtedness owed from the garnishee-defendant to Robert. Robert appeals raising several issues, which we consolidate and restate as: whether the award of punitive damages and the post-judgment interest on the punitive damage award violate Indiana public policy and constitute excessive fines, as well as cruel and unusual punishment in violation of the United States Constitution.[2] In his Appellee's brief, Trisler requests sanctions pursuant to Indiana Appellate Rule 66(E).

We affirm and remand for proceedings consistent with this opinion.

### Facts and Procedural History

This cause of action commenced in 1987, and this is the third appeal in its fifteen-

---

1. *See Executive Builders, Inc. v. Trisler*, 741 N.E.2d 351 (Ind.Ct.App.2000), *trans. denied.*

2. In his Appellant's Brief, Robert purportedly raises thirteen issues for our review. However, in the argument section of his brief, Robert only presents cogent arguments for the issue noted above; therefore, those issues are waived. See *Hollowell v. State*, 707 N.E.2d 1014, 1025 (Ind.Ct.App.1999) (observing that failure to present cogent argument constitutes waiver of issue for appellate review); Ind. Appellate Rule 46(A)(8)(a).

year history. *See Trisler v. Executive Builders, Inc.,* 647 N.E.2d 390 (Ind.Ct. App.1995), *trans. denied; Executive Builders, Inc., v. Trisler,* 741 N.E.2d 351 (Ind.Ct.App.2000), *trans. denied* (hereinafter *"Trisler II"*). Many of the pertinent facts are found in *Trisler II,* as follows:

The facts most favorable to the verdict are that Executive Builders, which was owned by Robert and Dolores Montgomery and a number of other individuals, purchased some real property in Greenwood in a development area known as Cielo Vista. The plan was to subdivide the property into sixty-lot units of condominium housing. While the estimated value of the land was approximately $900,000, Executive paid a purchase price of $310,000 for its lots. Trisler owned and rented three of the seventeen units that had already been sold. In 1985, he moved to an adjoining subdivision but continued to rent his Cielo Vista units.

At one point, Dolores took it upon herself to amend certain Homeowner's Association (Association) documents in the subdivision to "properly reflect" the corporate status "as viewed by Executive Builders." *Trisler,* 647 N.E.2d at 391. Prior to Dolores's actions, Trisler had attempted to revive the Association by having another homeowner in the subdivision file an annual corporate report with the Indiana Secretary of State. In response, Executive appointed and/or elected a "purported" new Board of Directors and Officers for the Association. *Id.* Robert served as the self-appointed chairman of the Association. Dolores and other members of Executive were designated to serve three-year terms on the Association's Board of Directors. Record at 3429.

In May 1986, the Association placed a "special assessment" against the original seventeen unit owners, purportedly for repairs to the property. Approximately one year later, the Association attempted to place liens against the units on the basis of unpaid regular monthly assessments for the period between 1980 and 1985.

Trouble began to brew with respect to the levying of such "assessments" and Trisler, who believed that the charges brought by the Association were improper, consulted with legal counsel. Thereafter, Trisler maintained that the Board of Directors had been improperly appointed and that Executive owed the Association "thousands of dollars." R. at 2476.

In response, Robert immediately began accusing Trisler of wrongdoing. For instance, Robert sent a letter to all homeowners indicating that Trisler was desiring to "keep him and his friends in the rental property business and to protect their investments at your expense." R. at 3163–64. Robert sent additional correspondence to the property owners alleging that Trisler "would just as soon turn this community into a slum rental project." R. at 2863. After Robert discovered that his written correspondence had not produced any favorable result to him, he filed a complaint in the trial court on December 11, 1987, against Trisler, alleging "Intentional Interference with Business." R. at 51. The allegations asserted that Trisler had advised the homeowners in the development to withhold payment of their monthly fees and that he interfered with the Association "on an ongoing basis." R. at 59. Executive also maintained that Trisler utilized attorneys to create artificial legal obstacles, such as challenging the validity of all meetings of the Association and generally impeding the progress of Executive. R. at 59. Moreover, Executive asserted that Trisler deterred potential customers from making purchases of the condominium

properties and maintained that Trisler's actions were done with the willful intent to injure and damage Executive which entitled it to punitive damages. R. at 63.

Trisler denied all allegations and proceeded to file a counterclaim against Executive Builders along with a third-party seven-count complaint against Robert and Dolores. Trisler sought damages for defamation, invasion of privacy, abuse of process and frivolous litigation. The trial court eventually entered summary judgment in favor of Trisler upon the complaint for business interference that Executive had filed against him.

Robert and Dolores continued their attack on Trisler. On February 7, 1988, the purported minutes of the annual meeting of the Association, held on June 14, 1987, were typed and distributed to the homeowners. Dolores was responsible for the contents of all such newsletters to the homeowners. R. at 2280. That newsletter cast Trisler in a derogatory and unfavorable light. R. at 2852–56.

Although summary judgment for Trisler was entered on February 21, 1990, the trial court vacated its order on March 31, 1994, in accordance with Executive's request. Trisler then appealed that order to this court, where we reversed the trial court and remanded the cause with instructions that the original judgment be reinstated with respect to the interference claim. *Trisler*, 647 N.E.2d at 394.

Following remand, Trisler's counterclaim and third-party complaint against Executive proceeded to trial on June 28, 1999. At the close of all evidence, Executive filed a motion for a directed verdict on the grounds that "Trisler did not, and could not identify any act that was committed individually by Robert ... and/or Dolores." Appellant's Brief at 24. The motions were denied and the

jury proceeded to return verdicts in Trisler's favor against Executive Builders in the amount of $143,240, against Robert in the sum of $15,000 and against Dolores for $20,000, for a total judgment award of $178,240. Thereafter, a hearing was held on the issue of punitive damages. During that phase of the trial, it was determined that Robert's assets exceeded $16 million, the assets of Executive Builders was in a negative amount totaling hundreds of thousands of dollars and that Dolores earned an annual income of $15,000. Neither Robert nor Dolores appeared at that juncture of the trial nor offered testimony in rebuttal of the asset values that had been established.

On June 8, 1999, the jury awarded punitive damages against Robert in the amount of $1.64 million and no punitive damages against Executive Builders or Dolores. The following day, Executive requested the trial court to vacate the jury award with respect to the total damage award. These motions were denied on October 18, 1999, and the trial court proceeded to enter judgment in the amount awarded by the jury. Thereafter, the trial court denied Executive's motion to correct error on December 22, 1999.

*Id.* at 354–55 (citations omitted). Robert raised several issues on appeal in *Trisler II*, including whether the award of punitive damages was erroneous. Specifically, he argued that

the judgment [of punitive damages] may not stand because there was no showing that his actions were malicious, oppressive and intentional. Moreover, Robert maintains that the award violated his rights to due process under the United States Constitution and Indiana Constitution in that the amount awarded was impermissibly excessive.

*Id.* at 359–60. Our court held that the evidence was sufficient to support an award of punitive damages and a punitive damage award of ten percent of Robert's total economic wealth was not impermissibly excessive. *Id.* at 361. Therefore, we affirmed the trial court on that issue, as well as the other issues raised by Robert in *Trisler II.*[3]

Eventually, Trisler was able to collect 1.6 million dollars of the judgment, but a portion of the judgment remained unpaid. Therefore, on January 8, 2002, Trisler filed a motion for proceedings supplemental to collect the remaining balance on the judgment and accrued interest totaling over $300,000. Appellant's App. p. 62. A hearing was held on the motion on February 14, 2002. On that same day, the trial court entered several orders of garnishment ordering various companies, banks, and brokerage firms in which Robert had an interest or account to produce documentation to the court by March 14, 2002, regarding any of Robert's property held by the Garnishee–Defendant or any indebtedness owed from the Garnishee–Defendant to Robert. Appellant's App. pp. 76–89. Robert also filed a notice of appeal on February 14. However, on February 20, 2002, Trisler filed a notice of satisfaction of judgment, which provided:

> the Judgment entered against Robert Montgomery herein by this Court on October 19, 1999, has been fully paid and satisfied, and the parties to this cause of action would now request the Court to so notify the Clerk of Shelby County to show the aforesaid Judgment to be satisfied as a matter of record.

Appellee's App. p. 22. Robert filed his Appellant's Brief on March 18, 2002.[4]

Trisler then filed his Appellee's Brief in which he requested damages pursuant to Indiana Appellate Rule 66(E).

## Discussion and Decision

■ Robert argues that the punitive damage award, and the post-judgment interest on that award, is an excessive fine in violation of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and Indiana public policy. He therefore contends that the trial court erred when it entered orders of garnishment as requested by Trisler during proceedings supplemental to satisfy the remaining unpaid balance of the punitive damage award. Trisler argues that the law of the case doctrine prevents Robert from raising this issue on appeal.

> Under the law of the case doctrine, an appellate court's determination of a legal issue is binding both on the trial court on remand and the appellate court on a subsequent appeal, given the same case with substantially the same facts. All issues decided directly or implicitly in a prior decision are binding on all subsequent portions of the case. The doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided. The doctrine is based upon the sound policy that when an issue is once litigated and decided, that should be the end of the matter.

*Humphreys v. Day,* 735 N.E.2d 837, 841 (Ind.Ct.App.2000), *trans. denied* (citations omitted).

■ In *Trisler II,* Robert argued that the punitive damage award was erroneous because there was no showing that his actions were malicious, oppressive, and in-

---

**3.** After his petitions for rehearing and transfer were denied, Robert pursued a Petition for Writ of Certiorari in the United States Supreme Court, which was denied. Appellee's App. p. 21.

**4.** Robert's motion for oral argument is hereby denied.

tentional. *Trisler,* 741 N.E.2d at 359–60. He also contended that "the award violated his rights to due process under the United States Constitution and Indiana Constitution in that the amount awarded was impermissibly excessive." *Id.* at 360. Affirming the trial court, our court determined that there was sufficient evidence to support the punitive damage award and it was not excessive. Therefore, we agree with Trisler that the law of the case doctrine bars re-litigation of the issue of whether the punitive damage award was excessive.

▇ Also, in *Trisler II,* Robert failed to raise the argument of whether the interest on the punitive damage award was excessive in violation of the United States Constitution and Indiana public policy, and therefore, the issue is waived. "[A]n issue ripe for review, but not raised in the first appeal, will be considered as finally determined and will be deemed affirmed." *Mafnas v. Owen County Office of Family & Children,* 699 N.E.2d 1210, 1212 (Ind.Ct. App.1998), *trans. denied* (citing *Citizens Action Coalition of Ind., Inc. v. N. Ind. Pub. Serv. Co.,* 582 N.E.2d 387, 391 (Ind. Ct.App.1991)). Furthermore, because Trisler filed a notice of satisfaction of judgment in the trial court, the issue is moot. *See Ind. High Sch. Athletic Ass'n, Inc., v. Durham,* 748 N.E.2d 404, 410 (Ind.Ct.App. 2001) (stating "[w]hen the principal questions in issue have ceased to be matters of real controversy between the parties, the errors assigned become moot questions and the court will not retain jurisdiction to decide them").

Finally, Trisler argues that due to the "horrendously frivolous and blatantly bad faith nature" of Robert's conduct in this appeal, he is entitled to damages under Indiana Appellate Rule 66(E). Br. of Appellee at 16. Rule 66(E) provides:

The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution.

In addition, this court is authorized to award attorney fees pursuant to Indiana Code section 34–52–1–1 when a party continues to litigate a claim after it becomes frivolous, unreasonable or groundless. Ind.Code § 34–52–1–1 (1999). However, we note that "[i]n exercising our discretionary power … we must use extreme restraint due to the potential chilling effect upon the exercise of the right to appeal." *Walker v. Pillion,* 748 N.E.2d 422, 427 (Ind.Ct.App.2001) (citation omitted).

▇ In this appeal, Robert is attempting to re-litigate issues that have already been decided by our court. Also, Robert's Appellant's brief is not in compliance with Indiana Appellate Rule 46(A) as his statement of the case and statement of the facts contain argument rather than a recitation of the facts and procedural history. *See e.g., Catellier v. Depco, Inc.,* 696 N.E.2d 75, 79 (Ind.Ct.App.1998) (finding procedural bad faith where the Appellant's brief contained argument in the statement of the case and the statement of facts). Furthermore, in his brief, Robert failed to disclose the fact that there had been two prior appeals in this case, and in one of those appeals he raised many of the same issues. *See e.g., Posey v. Lafayette Bank & Trust, Co.,* 512 N.E.2d 155, 156 (Ind. 1987) (finding bad faith where the Appellant failed to disclose a previous appeal raising many of the same issues). For all of these reasons, we find Robert's appeal to be frivolous and without merit, and we believe that an award of appellate attorney fees to Trisler is appropriate. Therefore, we remand to the trial court with instructions to determine and award an appropriate amount of appellate attorney fees.

Affirmed and remanded for proceedings consistent with this opinion.

BARNES and KIRSCH, JJ., concur.