**INS INVESTIGATIONS BUREAU, INC., Vernon Large, and Richard Murphy, Appellants–Defendants,**

v.

**Lester L. LEE, William R. Lee, Cubeco, Inc., and Lees Inns of America, Inc., as Assignees of the rights of The Home Indemnity Co., Appellees–Plaintiffs.**

No. 40A04–0108–CV–364.

Court of Appeals of Indiana.

March 10, 2003.

⚿91(1)

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham McHale LLP, James W. Riley, Jr., Mary K. Reeder, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorneys for Appellants.

Corinne R. Finnerty, McConnell & Finnerty, North Vernon, IN, Attorney for Appellees.

## OPINION

KIRSCH, Judge.

INS Investigations Bureau, Inc., Vernon Large, and Richard Murphy (collectively, "INS") appeal a jury verdict that awarded

Lester L. Lee ("Lester"), William R. Lee ("Bill"), Cubeco, Inc. ("Cubeco"), and Lees Inns of America ("Lees Inns"), as assignees of the rights of The Home Indemnity Co. ("Home Indemnity"), $2,303,601 in compensatory damages for a breach of contract action, $2,546,404 in compensatory damages for a tort action, and $4,600,000 in punitive damages. The court's judgment also awarded the Lees the costs of the trial court action.

On appeal, INS raises a number of issues, which we consolidate, restate, and reorder as follows:

I. Whether the negligence claim raised by the Lees, as assignees of Home Indemnity's rights, is barred by the statute of limitations because Home Indemnity knew or should have known more than two years before this action was brought that it was injured by INS.

II. Whether the Lees, as assignees of Home Indemnity's rights, raise a claim of indemnity against INS that is barred both by Home Indemnity's voluntary payment to settle the federal litigation that arose out of the denial of the Lees' fire claim and because Home Indemnity's injury was due, in part, to its own negligent actions.

III. Whether the trial court erred in allowing the jury to return a verdict on the contract and tort claims, which arose from the same set of facts and resulted in a single injury.

IV. Whether the jury erred in concluding that INS's investigation report was the proximate cause of Home Indemnity's losses.

V. Whether there was sufficient evidence to support an award of punitive damages.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY[1]

Lester and Bill are the founders and majority stockholders of Lees Inns. Lees Inns builds and operates limited-service hotels using modular units that in 1992 were constructed at Cubeco, a wholly owned subsidiary of Lees Inns. The Cubeco plant, located in Scipio, Indiana, was owned by Lester and Bill individually.

Home Indemnity insured the plant and its contents for approximately $1.4 million. The insurance policy contained an "arson defense clause," which permitted Home Indemnity to deny a claim if the Lees or someone at their direction committed arson at the Cubeco plant, but required Home Indemnity to pay the claim if someone other than the Lees committed the arson. *Appellants' Appendix* at 677.

On January 19, 1992, the Cubeco plant was partially destroyed by fire. Two days after the fire, Home Indemnity's adjuster, Richard Clasen, visited the scene and concluded that the fire looked suspicious and required further investigation as to its origin. By telephone, Clasen retained INS to perform the investigation, and INS proceeded without the benefit of a written contract. INS was instructed to report its findings to Michael Brown, an attorney with the Indianapolis law firm of Kightlinger and Gray, who had been hired by Home Indemnity in connection with the investigation.

1. We heard oral argument in this case on December 3, 2002, in Madison, Indiana at Madison Consolidated High School. We thank the students, faculty, and our host, the Bar Association of Jefferson County, for their gracious reception. We also commend counsel on the quality of their written and oral advocacy.

INS immediately began the fire investigation under the direction of its chief investigator, Vernon Large. Richard Murphy, who worked for INS until June of 1997, was also involved in the investigation. At first, INS's investigation was limited to determining the cause of the fire. Later, Home Indemnity expanded INS's assignment "to include a 'full investigation' with background information on the insureds." *INS Investigations Bureau, Inc. v. Lee*, 709 N.E.2d 736, 738 (Ind.Ct.App. 1999), *trans. denied*. Based upon his investigation, "Large concluded that the fire was intentionally set." *Id.*

During the summer of 1992, Home Indemnity pursued an independent investigation of the Lees' financial condition as a possible motive for arson. *Id.* In connection with this investigation, Home Indemnity hired the accounting firm of Campos & Stratis, which concluded, "the insureds were under severe financial stress, that the [Cubeco] building was on unproductive property with lease payments of $180,000 per year, and that the insureds had a substantial investment in an inventory of materials that depreciated in value." *INS Investigations Bureau*, 709 N.E.2d at 738; *see Appellants' Brief* at 29. The accountants told Brown that the Cubeco building was a detriment to Cubeco's ability to operate. *Appellants' Brief* at 29. "In short, the fire was a financial benefit to the Lees." *Appellants' Brief* at 30.

In the meantime, the Lees hired their own investigator, John Yust, and their own forensic engineer, William Hoffman. After investigating the fire, both of these experts concluded that the fire was started in an electric furnace that lacked an air filter. It was their theory that sawdust from the cabinet-making operation blocked the airflow to the furnace, which, in turn, caused the furnace elements to overheat and ignite the sawdust.

Brown, Clasen, and three other adjusters for Home Indemnity determined that the Lees' claim should be denied. *INS Investigations Bureau*, 709 N.E.2d at 738. The adjusters did not claim any particular expertise in fire investigation, but based their decision upon discussions of various reports. *Id.* In a letter dated November 25, 1992, Clasen informed the Lees that Home Indemnity denied their claim on the following grounds:

"[T]he fire was attributable to an intentional act by someone in authority and responsible for the insureds, that false or misleading information was provided by representatives of the insureds, and that the insureds refused to 1) provide material information regarding financial records of affiliates, and 2) allow contact with a lender-investor in the business."

*Id.*

On December 29, 1992, the Lees filed suit in Jennings Circuit Court against Home Indemnity. In the complaint, the Lees claimed they were entitled to the $1.4 million insurance policy coverage, consequential damages for Home Indemnity's breach of the contract, and punitive damages because Home Indemnity acted oppressively and in bad faith in denying their claim. On February 1, 1993, Home Indemnity removed the case to federal court on the basis of diversity jurisdiction and subsequently moved for summary judgment. Judge Hugh Dillin denied the motion on December 15, 1994. *Appellants' Appendix* at 517–25.

In January of 1995, on the first day of trial, the federal suit was settled when Home Indemnity agreed to pay the Lees $3.5 million. As part of the settlement, Home Indemnity assigned any claims it had against INS to the Lees and also gave the Lees a letter apologizing for its conduct and that of its agents. *Trial Exhibits, Vol. 18, Plaintiffs' Exhibits* 21–22.

On July 7, 1995, the Lees instituted this action. Acting pursuant to their assigned rights, the Lees sued INS alleging that the fire investigation performed by INS and its employees, Large and Murphy, caused Home Indemnity to erroneously deny the Lees coverage. The complaint included the following three counts: (1) that INS breached its contract with Home Indemnity by failing to perform its obligations in a skillful, careful, diligent, and workmanlike manner, which caused the denial of the Lees' claim and a subsequent settlement greatly in excess of the policy limits; (2) that INS and its employees owed Home Indemnity a duty of care to perform services in a skillful, careful, diligent, and workmanlike manner, and that INS's breach of that duty was a proximate cause of the erroneous denial of the Lees' claim and the subsequent litigation; and (3) that INS and its employees acted fraudulently, oppressively, maliciously, and outrageously toward Home Indemnity and the Lees and were thus liable for punitive damages. *Appellants' Appendix* at 33–41.

On December 22, 1997, INS moved for summary judgment. On May 18, 1998, after "review[ing] the extensive briefs ... and having heard argument," the trial court denied INS's motion. *Appellants' Appendix* at 608–09. INS sought an interlocutory appeal, which the trial court granted. On appeal, INS argued that summary judgment was warranted on the Lees' claim because: (1) Home Indemnity could not validly assign its claim to the Lees; and (2) the assigned claim was properly characterized as a negligence action, and the applicable two-year statute of limi-

tations had run. *INS Investigations Bureau*, 709 N.E.2d at 737. Finding that Home Indemnity's claim was assignable and that it was a question of fact whether the statute of limitations had run on the Lees' claim, our court affirmed the trial court's denial of summary judgment. *Id.* at 744.

On February 22, 2001, after a three-week trial, the jury rendered three verdicts in favor of the Lees and ordered INS to pay the following: (1) $2,303,601 in compensatory damages on Count I's contract claim; (2) $2,546,404 in compensatory damages on Count II's negligence claim;[2] and (3) $4,600,000 in punitive damages under Count III. *Appellants' Appendix* at 27, 29, 31. The trial court entered judgment on all three verdicts on February 26, 2001. *Appellants' Appendix* at 25–26.

INS objected to the Lees' request for judgment on all three verdicts because Count I and Count II were alternate bases of relief, as both arose from the same alleged conduct and resulted in the same alleged damages. *Appellants' Appendix* at 856. On March 28, 2001, INS filed a motion to correct errors contending, *inter alia*, that: (1) INS did not cause Home Indemnity's damages; (2) the Lees' indemnity claims were barred because of Home Indemnity's comparative fault; (3) the negligence claim was barred by the statute of limitations; (4) the punitive damage award was not supported by the evidence and was excessive in violation of Indiana and federal constitutional law; (5) the compensatory damage award was not supported by the evidence and was excessive;

---

**2.** On Count II, the jury determined Home Indemnity had sustained $3,395,205 in compensatory damages. *Appellants' Appendix* at 29. This amount represented the settlement payment to the Lees in excess of their policy limit, the payments to INS for its investigation, and the attorney fees for the prior suit,

plus prejudgment interest of 8%. *Transcript, Vol. 13* at 2742–44. After finding that Home Indemnity was 10% at fault and non-parties were 15% at fault, the jury determined that INS should pay $2,546,404 on the basis that it was 75% at fault. *Appellants' Appendix* at 29.

(6) the verdicts were inconsistent; and (7) the judgment constituted double recovery. *Appellants' Appendix* at 859–60.

The Lees opposed the motion to correct errors and, arguing that punitive damages were not excessive, the Lees sought discovery pertaining to INS's assets and its relationship to its financially sound parent corporation GAB. INS filed a motion for protective order claiming that GAB's financial information was irrelevant. The trial court granted the protective order as it related to the motion to correct errors. A hearing on the motion to correct errors was held on August 9, 2001, at which time the Lees tried, unsuccessfully, to present evidence of GAB's financial status. On September 4, 2001, the trial court denied INS's motion to correct errors without entering any findings. *Appellants' Appendix* at 32. INS now appeals.

## DISCUSSION AND DECISION

### I. Statute of Limitations

The Lees, as assignees of Home Indemnity's rights, filed the instant lawsuit on July 7, 1995. INS first contends that because the complaint sounds in negligence and Home Indemnity knew of or could have discovered INS's alleged wrongdoing before July 7, 1993, the suit is barred by the two-year statute of limitations, and the verdict cannot stand. The Lees respond that our decision in *INS Investigations Bureau* is "the law of the case" because INS previously raised this issue in its interlocutory appeal from the denial of summary judgment. *Appellees' Brief* at 25. We agree with the Lees.

Under the law of the case doctrine, an appellate court's determination of a legal issue is binding both on the trial court on remand and on the appellate court on a subsequent appeal, given the same case with substantially the same facts. *Montgomery v. Trisler*, 771 N.E.2d 1234, 1238 (Ind.Ct.App.2002), *trans. denied* (citing *Humphreys v. Day*, 735 N.E.2d 837, 841 (Ind.Ct.App.2000), *trans. denied* (2001)). All issues decided directly or implicitly in a prior decision are binding on all subsequent portions of the case. *Montgomery*, 771 N.E.2d at 1238. The doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided and is based upon the sound policy that when an issue is once litigated and decided, that should be the end of the matter. *Id.*

In *INS Investigations*, our court affirmed the trial court's denial of summary judgment concluding that the determination of whether the statute of limitations had run in this case was a material issue of fact. *INS Investigations*, 709 N.E.2d at 743–44. In analyzing when a cause of action accrues under a statute of limitations, the critical time is "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the act of another." *UNR–Rohn, Inc. v. Summit Bank*, 687 N.E.2d 235, 240 (Ind. Ct.App.1997), *trans. denied* (1998). In light of the conflicting evidence presented to the trial court as to when Home Indemnity knew or should have known of its injury by INS, our court stated, "INS is requesting that this court examine conflicting evidence and inferences[;] ... summary judgment is not the appropriate means to resolve material issues of fact." *INS Investigations*, 709 N.E.2d at 743–44. The court thus found that it was the duty of the finder of fact to determine whether the complaint was timely filed and affirmed the denial of summary judgment. *Id.*

At trial, INS argued that the statute of limitations barred the Lees' recovery for negligence. The jury considered the evi-

dence, was instructed that the running of the statute of limitations was an affirmative defense, and yet found for the Lees.[3] To reach a verdict in the negligence claim, the jury had to find that the statute of limitations had not run. Under the law of the case, we are bound by our previous decision in *INS Investigations* that the timeliness of this action was a question of fact, and we will not disturb the finder-of-fact's conclusion that the Lees' claim was timely filed.

INS also states, without citation, "Because this tort claim is barred by the two-year statute of limitations, Home [Indemnity]'s claim for punitive damages is barred as well." *Appellants' Brief* at 58. Finding, as we do, that the negligence claim is not barred by the two-year statute of limitations, the punitive damages claim is likewise not barred.

## II. Indemnity

■ INS asserts for the first time on appeal that the true nature of the Lees' claim is one for indemnity. *Appellants' Brief* at 43. Both parties agree that Home Indemnity had no contractual or statutory right to indemnification from INS. Indiana adheres to the general rule that in the absence of an express contractual or statutory right to indemnity, a party may bring an action for common law indemnification only if he is without fault. *Mullen v. Cogdell,* 643 N.E.2d 390, 400 (Ind.Ct.App. 1994), *trans. denied* (1995). INS argues that the Lees' claim for common law indemnification is defeated by their own guilty acts. The Lees counter that this is not a claim for indemnity and highlight the fact that neither the word "indemnity" nor "indemnify" appear in the complaint or other pleadings. *Appellees' Brief* at 30; *Appellants' Appendix* at 33–41.

As explained in 41 Am.Jur. 2d *Indemnity* § 1 (1995):

> "Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other.

The right to indemnity stands upon the principle that everyone is responsible for the consequences of his own negligence, and if another person has been compelled to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him. Indemnity requires full reimbursement, and transfers liability from the one who has been compelled to pay damages to

---

**3.** The jury was given the following instruction:

> "The Defendants have raised the affirmative defense of the Statute of Limitations in this case.
>
> A negligence claim against the Defendants based upon its or their provision of professional services must be filed within two (2) years from the date on which [T]he Home Indemnity Company knew, or in the exercise of ordinary diligence, could have discovered, that an injury had been sustained as the result of the acts of the Defendants.
>
> The complaint in this case was filed on July 7, 1995.
>
> The Defendants have the burden of proving that [T]he Home Indemnity Company

knew, or in the exercise of ordinary diligence, could have discovered that an injury had been sustained as the result of the acts of the Defendants before July 7, 1993. If the Defendants have proved by a preponderance of the evidence that [T]he Home Indemnity Company knew, or in the exercise of ordinary diligence, could have discovered, that an injury had been sustained as the result of the acts of the Defendants before July 7, 1993, the Statute of Limitations bars the Lees' negligence claims and you should enter a verdict in favor of the Defendant[s] on the negligence claims.

> The Statute of Limitations Defense does not apply to bar the Lees' breach of contract claims however."

*Appellees' Appendix* at 781.

another who should bear the entire loss."

In this action, the Lees are pursuing the rights of Home Indemnity. Even so, they do not allege in their complaint that money paid to them by Home Indemnity under the settlement of the federal lawsuit should have been paid by INS. Instead, they assert that INS and its employees had a duty both under contract and as professional investigators to investigate the fire in a skillful, careful, diligent, and workmanlike manner, and that INS's failure to do so resulted in loss to Home Indemnity. *Appellants' Appendix* at 35–39.

■ Our supreme court has held that "[t]he right to indemnity may be implied at common law only in favor of one whose liability to a third person is solely derivative or constructive, and only as against one who has by his wrongful act caused such derivative or constructive liability to be imposed upon the indemnitee." *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.,* 578 N.E.2d 669, 671 (Ind.1991); *see Mullen,* 643 N.E.2d at 400. Here, Home Indemnity's liability to the Lees was not solely derivative; instead, the liability arose, in part, pursuant to the insurance contract between the two parties.

■ Furthermore, an "obligation to indemnify does not arise until the party seeking indemnity suffers loss or incurs damages. This may occur when the party seeking indemnity 1) pays the underlying claim; 2) pays judgment on the underlying claim; or 3) tenders payment in settlement of the underlying claim." *Essex Group, Inc. v. Nill,* 594 N.E.2d 503, 507 (Ind.Ct. App.1992) (citing *TLB Plastics Corp., Inc. v. Procter & Gamble Paper Prods. Co.,* 542 N.E.2d 1373, 1376 (Ind.Ct.App.1989), *trans. dismissed* ). In their complaint, the Lees did not allege that Home Indemnity paid the federal court settlement and in-

curred a loss for which INS should indemnify. Likewise, INS, in its motion for summary judgment and at trial, argued that the Lees' claim was one sounding in negligence; no mention was made that the action was one for indemnification.

Home Indemnity assigned to the Lees every interest it had in claims against INS. As assignees, the Lees can sue INS using those theories Home Indemnity could have used to recover damages it incurred because of INS's actions. Here, the Lees chose to assert claims under tort and contract. Finding that this is not a claim for indemnity, we need not address INS's additional arguments that the claim is barred by Home Indemnity's wrongdoing or by its voluntary payment of the Lees' claim.

### III. Double Recovery

■ INS next asserts that the trial court erred in awarding compensatory damages for claims of both negligence and breach of contract on the same facts and the same damages. The Lees counter that INS waived this issue of double recovery when it agreed to the verdict form that allowed the double award. We agree with INS.

■ INS and Home Indemnity entered into an oral contract under which INS would investigate the origin of the Lees' fire. Our courts have held that " '[i]n a contract for work, there is an implied duty to do the work skillfully, carefully, and in a workmanlike manner. Negligent failure to do so is a tort, as well as a breach of contract.' " *Homer v. Burman,* 743 N.E.2d 1144, 1147 (Ind.Ct.App.2001) (quoting *Hagerman Const., Inc. v. Copeland,* 697 N.E.2d 948, 958 (Ind.Ct.App.1998) (citations omitted), *trans. denied* (1999)); *see* 57A AM.JUR. 2d *Negligence* § 120 (1989 & Supp.2002) (same).

In Count I of their complaint, the Lees allege that INS breached its contract with

Home Indemnity when it failed to perform the contract in a "skillful, careful, diligent, and workmanlike manner resulting in substantial losses and damages to the Home Indemnity Company." *Appellants' Appendix* at 35–38. In Count II, the Lees allege that INS and its employees owed Home Indemnity a duty to investigate the fire in a "skillful, careful, diligent, and workmanlike manner" and that INS's breach of this duty constituted negligence. *Appellants' Appendix* at 38–39. Both the contract and negligence counts allege a breach of the same duty and rely on the same injury.

■ It was not error for the trial court to allow the parties to proceed under the two theories. Indiana law "allows a party to plead alternative and even inconsistent theories of recovery: 'A pleading may ... state as many separate claims or defenses as the pleader has regardless of consistency and whether based on legal or equitable grounds.'" *Cahoon v. Cummings*, 734 N.E.2d 535, 542 (Ind.2000) (citing Ind. Trial Rule 8(E)(2)); *see Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 28 (Ind.Ct.App.1999), *trans. denied* (2000) (a pleading may set forth two or more claims alternatively or hypothetically, either in one count or in separate counts).

■ Nevertheless, a party may not recover twice for the same wrong. Damages are awarded to compensate an injured party fairly and adequately for the loss sustained. *Bader v. Johnson*, 732 N.E.2d 1212, 1220 (Ind.2000). In negligence actions, the injured party is entitled to damages proximately caused by the tortfeasor's breach of duty. *Id.* A party injured by a breach of contract may recover the benefit of the bargain. *Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind.Ct. App.1993). The damages claimed for such a breach must be the natural, foreseeable and proximate consequence of the breach. *Id.* While an aggrieved party must be compensated, he or she should not be placed in any better position. *Wiese–GMC, Inc. v. Wells*, 626 N.E.2d 595, 597 (Ind.Ct.App. 1993), *trans. denied* (1994); *see Potts v. Offutt*, 481 N.E.2d 429, 434 (Ind.Ct.App. 1985); *Downing v. Dial*, 426 N.E.2d 416, 421 (Ind.Ct.App.1981).

■ The law disfavors a windfall or a double recovery. *Curtis v. Clem*, 689 N.E.2d 1261, 1265 (Ind.Ct.App.1997). Here, the jury verdict resulted in a recovery in both tort and contract, thus allowing a double recovery for a single wrong. *See Kellogg v. City of Gary*, 562 N.E.2d 685, 708 (Ind.1990). Because our supreme court has noted that double recovery "constitutes fundamental error which cannot be waived," *id.*, the Lees' argument of waiver does not prevail. The Lees may not recover for both of these causes of action.

■ In determining which count to vacate, it is important to understand how an injury that arises in the context of a contract, can give rise to an action both in contract and tort. Generally, a breach of contract is not a tort.

"However, a contract may create a state of things which furnishes the occasion of a tort, so that negligent performance of a contract may give rise to an action in tort.... The relation which is essential to the existence of the duty to exercise care may arise through either an express or an implied contract.

As a general rule, there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract. Thus, a person who contracts to make repairs can be held liable for his negligence in doing the work. And one who contracts in a specialized professional capacity to provide

the design for a particular structure may be held to respond in damages for the foreseeable consequences of a failure to exercise reasonable care in the preparation of the design. In such cases, the contract is mere inducement creating the state of things which furnishes the occasion of the tort. In other words, the contract creates the relation out of which grows the duty to use care.

. . . .

The prevailing rule appears to be that where there is a general duty, even though it arises from the relation created by, or from the terms of, a contract, and that duty is violated, either by negligent performance or negligent nonperformance, the breach of the duty may constitute actionable negligence."

57A AM.JUR. 2d Negligence §§ 119–21.

■ Although the Lees could raise a claim either in tort or contract, the essence of their claim is not that INS breached its contract by failing to complete and submit a fire investigation report; instead, they argue that in the role of professional fire investigators, INS and its employees had a duty to complete the investigation in the skillful and workmanlike manner required of other persons in that profession. Here, the Lees' claim that INS breached the standard of care created under the contract more closely resembles a claim for negligence. We therefore vacate the recovery of $2,303,601 for the contract claim and affirm the $2,546,404 recovery in tort.

INS further argues that because the jury's verdicts are inconsistent, our court should remand this case to the trial court to determine damages. We disagree. The $2,303,601 recovery in contract represented the damages, without pre-judgment interest, calculated by the Lees' expert, Bruce Jaffee, Associate Dean of the Kelley School of Business at Indiana University. *Transcript, Vol. 13* at 2742–44. Likewise,

the $2,546,404 tort recovery was composed of the same $2,303,601 in damages with the addition of $1,091,604 in prejudgment interest, *id.* at 2744, which sum was then multiplied by 75%, the amount of fault determined by the jury to be attributable to INS.

■ The difference between the two awards was the omission of the prejudgment interest on the contract claim. "[A]n award of prejudgment interest in a contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable." *Noble Roman's, Inc. v. Ward,* 760 N.E.2d 1132, 1140 (Ind.Ct. App.2002); *Stephens v. Parkview Hosp., Inc.,* 745 N.E.2d 262, 266 (Ind.Ct.App. 2001). The award is considered proper when the trier of fact need not exercise its judgment to assess the amount of damages. *Noble Roman's,* 760 N.E.2d at 1140. Finally, an award of prejudgment interest is generally not considered a matter of discretion. *Id.*

■ Here, the undisputed evidence shows that INS stipulated to the amounts of the majority of the damages that the Lees requested. *Appellants' Appendix* at 683; *Transcript, Vol. 13* at 2732. Furthermore, the Lees asserted, and INS did not object, that 8% is the proper amount of prejudgment interest. The trial court was not required to exercise any discretion in determining the prejudgment interest on the stipulated amount. *Noble Roman's,* 760 N.E.2d at 1141. The prejudgment interest, although omitted under the contract claim, was proper in this case for both claims. There is no need to remand the case for a determination of damages. The jury's decision on damages merely reflected the amounts admitted into evidence by Dean Jaffee. We therefore vacate the award of damages under the

Count I contract claim and affirm the award of $2,546,404 under the Count II negligence claim.

## IV. Proximate Cause of Home Indemnity's Losses

INS next contends that the Lees cannot prove a reasonable connection between INS's conduct and Home Indemnity's alleged damages, that is, that INS's actions were the proximate cause of Home Indemnity's damages. The Lees counter that they presented substantial evidence that INS's wrongdoing caused Home Indemnity's damages and that proximate cause is therefore a question of fact for the jury.

To sustain an action for negligence the Lees must show: (1) that INS had a duty to conform its conduct to a standard of care arising from its relationship with Home Indemnity; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty. *Kincade v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind.Ct. App.2002) (citing *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 457 (Ind.Ct. App.2000)); *P.T. Barnum's Nightclub v. Duhamell*, 766 N.E.2d 729, 737 (Ind.Ct. App.2002), *trans. denied* (citing *Zawacki v. U.S.X.*, 750 N.E.2d 410, 414 (Ind.Ct.App. 2001), *trans. denied* (2002)).

██ INS entered into an oral contract with Home Indemnity to investigate the fire at Cubeco. This contract created a duty for INS to complete its investigation in a skillful, careful, and workmanlike manner. *See Homer*, 743 N.E.2d at 1147 (citing *Hagerman Constr., Inc.*, 697 N.E.2d at 958). In its brief, INS does not challenge that it had a duty to Home Indemnity nor does it challenge that it breached that duty. Instead, INS argues that the breach of duty was not the proximate cause of Home Indemnity's loss. More specifically, INS argues that its investigation of the fire, and subsequent report of arson, neither caused Home Indemnity to deny the claim, nor caused it to settle the federal lawsuit for almost $2.4 million more than the insurance policy limit.

██ Under Indiana law, a negligent defendant may be liable for a plaintiff's injury if his or her action is deemed to be a proximate cause of that injury. *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 108 (Ind.2002). Whether proximate cause exists is a question of foreseeability. *Id.* Our supreme court has said, "the issue is whether the injury 'is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated.'" *Id.* (quoting *Bader*, 732 N.E.2d at 1218).

██ The actor need not foresee the exact manner in which the harm occurs but must, in a general way, foresee the injurious consequences of his act or omission. *Frye v. Am. Painting Co.*, 642 N.E.2d 995, 998 (Ind.Ct.App.1994) (citing *Rauck v. Hawn*, 564 N.E.2d 334, 339 (Ind. Ct.App.1990)). The determination of what is reasonably foreseeable is not judged by the subjective opinions of those involved, but is based upon the standard of due care in avoiding a result which might reasonably have been anticipated in the ordinary experience of men. *Frye*, 642 N.E.2d at 998 (citing *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1264 (Ind.Ct.App. 1989), *trans. denied*). The injured party is entitled to recover all damages caused by the tortfeasor's breach of duty that are directly related to the wrong and arise without an intervening agency. *Bolin v. Wingert*, 764 N.E.2d 201, 207 (Ind.2002) (citing *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind.1993)); *Bader*, 732 N.E.2d at 1220.

Evidence at trial that INS was negligent in completing its investigation included the

following: (1) only a few weeks after the Cubeco fire and approximately eight months before the completion of the investigation, INS investigator Large told Brown that the fire was caused by arson and that Bill was a potential suspect; (2) INS tried to influence the State Fire Marshall with false evidence; (3) INS implied that an innocent diesel fuel spill was part of an accelerant that started the fire; and (4) INS either suppressed or failed to consider evidence that was inconsistent with a finding of arson. *Appellees' Brief* at 35. The Lees alleged that this investigation was the proximate cause of their injuries because, but for the negligent determination of arson, Home Indemnity would not have denied the Lees' claim, would have had no reason to hire accountants or attorneys to defend the federal lawsuit, and would not have settled the federal lawsuit for an amount that exceeded the policy limit. *Appellees' Brief* at 36.

At trial, INS offered Proposed Final Jury Instruction No. 16 on proximate cause, which read as follows:

"In a negligence action, proximate cause is an essential element, and requires that there be a reasonable connection between the Defendants' alleged negligent conduct and the Plaintiffs' damages. Proximate cause requires, at minimum, that the harm would not have occurred but for the Defendants' conduct. Proximate cause does not mean approximate, it means the immediate, nearest, direct, next in order, and closest in causal connection. *'Proximate cause' is that cause which produces the damage complained of and without which the result would not have occurred. That cause must lead in a natural and continuous sequence to the*

*resulting damage [unbroken by any intervening cause]."*

*Appellants' Appendix* at 702 (emphasis added).[4] The trial court gave the instruction as Final Jury Instruction No. 27; amending the instruction only by deleting the bracketed language, "unbroken by any intervening cause." *Appellants' Appendix* at 777. Neither party objected to the change. *Appellants' Appendix* at 743, 746–47.

■■ On appeal, INS attacks the existence of proximate cause on two fronts. First, it highlights Brown's testimony that INS's actions did not impact Home Indemnity's decision to deny the Lees' claim, and concludes that the breach was therefore not the proximate cause of its damages. *Appellants' Brief* at 49, 50. Second, INS asserts that its liability is foreclosed because the accountants' analysis and the Lees' refusal to disclose certain financial information was a superseding cause. *Appellants' Appendix* at 50–51. We find these arguments unavailing.

First, INS's contention that proximate cause can be defeated on the basis of Brown's testimony, which was before the jury at trial, merely constitutes an invitation for this court to reweigh the evidence. *Couchman v. Restoration Contractors, Inc.*, 743 N.E.2d 346, 348 (Ind.Ct.App. 2001). We may not accept this invitation. *Deree v. All Am. Shipping Supplies, Inc.*, 718 N.E.2d 1214, 1217 (Ind.Ct.App.1999), *trans. denied* (2000); *see King v. Clark*, 709 N.E.2d 1043, 1048 (Ind.Ct.App.1999), *trans. denied* (our standard of review prohibits us from reweighing the evidence or judging the credibility of witnesses).

■■ Likewise, INS's argument that its liability is foreclosed by the superseding

---

**4.** Indiana's Civil Pattern Jury Instruction No. 5.06 uses only the italicized language to define proximate cause. The trial court gave a more detailed instruction when it permitted the inclusion of the leading two sentences included on INS's tendered instruction.

cause of the accountant's report and the Lees' failure to disclose certain financial information also fails. In *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 107 (Ind.2002), our supreme court described the doctrine of superseding or intervening cause as one that allows an original wrongdoer to be relieved of liability when the wrongdoer's negligent act or omission is followed by a subsequent negligent act or omission so remote in time that it breaks the chain of causation.[5] Here, INS's tendered instruction on proximate cause suggested the inclusion of language that proximate cause "must lead in a natural and continuous sequence to the resulting damage [unbroken by any intervening cause]." *Appellants' Appendix* at 702. The trial court gave the instruction, but omitted the bracketed language pertaining to intervening or superseding causation. INS did not object. INS's assertion on appeal that superseding causes preclude its actions from proximately causing Home Indemnity's injuries is an attempt to untimely raise an objection to the modified jury instruction. The issue is therefore waived on appeal. *See Brown v. Conrad,* 531 N.E.2d 1190, 1193 n. 2 (Ind.Ct.App. 1988) (failure to object to an instruction, waived the issue on appeal); *Santini v. Consol. Rail Corp.,* 505 N.E.2d 832, 840 (Ind.Ct.App.1987) (when a party tenders an instruction that the trial court modifies and gives to the jury, failure to object to the modification or to the giving of the instruction waives any instructional error for appeal).

▮ Waiver notwithstanding, a timely objection to this instruction would have led to the same result. In *Control Techniques, Inc.,* our supreme court considered whether a trial court had committed re-versible error in refusing a tendered jury instruction on the doctrine of superseding or intervening cause. Johnson, the plaintiff in the case, sustained serious burns to his arms and face while measuring the voltage of a circuit breaker at the LTV Steel Plant. Control Techniques designed and built the circuit breaker and Meade Electric installed it at the plant. At trial, Control Techniques argued that, under the doctrine of superseding causation, its liability was foreclosed by the negligence of Meade Electric in installing the breaker. Control Techniques tendered an instruction on superseding causation, which the trial court refused.

At the close of trial, the court gave the following instruction:

> " 'Proximate cause' is that cause which produces [the] injury complained of and without which the result would not have occurred. That cause must lead in a natural and continuous sequence to the resulting injury."

*Control Techniques,* 762 N.E.2d at 110. A jury awarded Johnson damages and allocated eighty percent liability to Meade Electric, fifteen percent liability to Johnson, and five percent to Control Techniques.

Control Techniques argued before our supreme court that it was error for the trial court to refuse the tendered instruction because Meade Electric's installation of the breaker was a superseding cause of the accident that foreclosed Control's liability. In affirming the trial court's judgment to exclude the tendered instruction, the court reasoned:

> "[T]he doctrines of causation and foreseeability impose the same limitations on liability as the 'superseding cause' doc-

---

5. Our supreme court used the terms "superseding" and "intervening" interchangeably to refer to an act of another that cuts off the liability of the original actor. *Control Techniques,* 762 N.E.2d at 107 n. 1.

trine. Causation limits a negligent actor's liability to foreseeable consequences. A superseding cause is, by definition, one that is not reasonably foreseeable. As a result, the doctrine in today's world adds nothing to the requirement of foreseeability that is not already inherent in the requirement of causation."

*Id.* at 108. The court concluded that trial courts may properly elect to give an instruction on superseding causation "if they conclude it would aid the jury in determining liability. However, this call is better left to the discretion of the trial courts, as they are in the best position to determine whether an instruction on superseding cause is useful." *Id.* at 110.

Here, the trial court used its discretion and refused to give that portion of INS's tendered instruction pertaining to superseding causation. Instead, the court gave an instruction similar to both the pattern jury instruction and to the one given in *Control Techniques.* Had INS timely objected, the precedent of *Control Techniques* would have mandated we find that the instruction on proximate causation adequately covered the subject, and that the trial court did not abuse its discretion in omitting the tendered instruction on superseding causation.

 Proximate cause is a question of fact for the jury. This jury heard weeks of testimony during which each party presented evidence as to whether INS's actions were the proximate cause of Home Indemnity's injury. With evidence that INS's investigation and arson determination could have caused Home Indemnity to incur financial loss, the issue of proximate cause was properly before the jury. We cannot say that this jury erred in finding that INS's negligent actions were the proximate cause of Home Indemnity's injury.

## V. Sufficiency of Evidence for Punitive Damages

 INS argues that the evidence does not support the award of punitive damages. The standard for determining if punitive damages were properly awarded is whether, considering only the probative evidence and the reasonable inferences supporting the judgment, a reasonable trier of fact could find by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing. *USA Life One Ins. Co. of Indiana v. Nuckolls,* 682 N.E.2d ´534, 541 (Ind.1997); *Budget Car Sales v. Stott,* 662 N.E.2d 638, 639 (Ind. 1996); *Hickman,* 622 N.E.2d at 520; *Inlow v. Wilkerson,* 774 N.E.2d 51, 57 (Ind. Ct.App.2002), *trans. denied; Stroud v. Lints,* 760 N.E.2d 1176, 1179 (Ind.Ct.App. 2002); *N. Indiana Pub. Serv. Co. v. G.V.K. Corp.,* 713 N.E.2d 842, 849 (Ind.Ct.App. 1999), *trans. denied* (2000). Punitive damages may also be awarded upon a showing of willful and wanton misconduct. *Stroud,* 760 N.E.2d at 1179.

 Punitive damages are those designed to punish the wrongdoer and to discourage him and others from similar conduct in the future. *Budget Car Sales v. Stott,* 656 N.E.2d 261, 265 (Ind.Ct.App. 1995), *trans. denied by* 662 N.E.2d 638 (Ind.1996). Because they are awarded in addition to damages that compensate for the specific injury, the injured party has already been awarded all that he is entitled to as a matter of law. *Budget Car Sales,* 656 N.E.2d at 265. Therefore, the sole issue is whether the defendant's conduct was so obdurate that he should be punished for the benefit of the general public. *Id.* Punitive damages are awarded

upon a showing of intentional conduct, which focuses on the defendant's state of mind. *Bright v. Kuehl*, 650 N.E.2d 311, 317 (Ind.Ct.App.1995). One such course of conduct is gross negligence, or the intentional failure to perform a duty in reckless disregard of the consequences to the life or property of another. *N. Indiana Pub. Serv. Co. v. Sharp*, 732 N.E.2d 848, 856 (Ind.Ct.App.2000), *trans. denied* (2001).

In *Indiana Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1093–94 (Ind.Ct.App.1992), the insureds sued their insurer for denying their fire claim. The jury awarded compensatory and punitive damages. The insurer appealed, arguing that the evidence was insufficient to support the award of punitive damages.

The evidence adduced at trial showed that the insureds hired two experts to investigate the explosion and fire, both of whom concluded that the explosion and resulting fire were caused by a defective heater that allowed gas to escape into the air, which was ignited by the flame of a second heater. One of the experts concluded that apparently unconnected fires in other parts of the building were caused by "falldown" and swirling embers in the aftermath of the explosion.

The insurer hired its own investigator, who interviewed witnesses, inspected the burned building and its contents, and consulted with an expert in gas explosions. Ultimately, he issued a written report in which he concluded that the fire and explosion were caused intentionally and that at least two separate fires were set. The insurer also hired an engineer and expert in gas explosions who concluded that the heaters were not the cause of the explosion and concurred in the first expert's theory of causation. The investigator from the Indiana State Fire Marshall's office conducted an investigation and also concluded

that the explosion and fires were intentional. Finally, the gas company's investigator concluded that there were a number of unconnected, intentionally set fires.

At the trial and on appeal, the insureds argued that they were entitled to punitive damages because the insurer's experts conducted a flawed investigation promoting a false theory of causation and resulting in unreasonable behavior. However, after reviewing the record, we concluded that there was no evidence that the investigations and conclusions of the four expert witnesses were unreasonable. Rather, the evidence showed at best that the insurer's experts were wrong. We concluded: "Evidence of reliance upon incorrect, but reasonable, theories is not sufficient to justify an award of punitive damages." *Id.* at 1094.

Similarly, in this case, the Lees' theory is that INS "fabricated an arson case against [the Lees]." *Appellees' Brief* at 42. The Lees contend that INS "repeatedly lied," "suppressed exculpatory evidence[,] and fabricated inculpatory evidence." *Appellees' Brief* at 43. At trial, the Lees presented evidence that their experts concluded that the cause of the fire was accidental. Their theory was that the fire began in an electric furnace when an accumulation of sawdust and debris on the heating coils ignited. The blower from the furnace then spread the fire throughout the mezzanine level of the building. Dripping, burning tar from the roof caused other unconnected areas of heavy burn. Also, the Lees presented expert testimony that INS's work on this investigation did not conform to prevailing professional standards.

However, John Walker, a forensic engineer specializing in the analysis of fires and explosions, testified that he believes that the cause of the Cubeco fire was

arson. He cited ten factors to support his opinion, many of which were the same factors cited by Large as aiding him in forming his opinion about the cause of the fire. Moreover, Large testified that he still believes that the cause of the fire was arson. Thomas Hinkle of the Indiana State Fire Marshall's Office testified that there were facts that would suggest arson and that he could not eliminate arson as the cause of fire. He testified that the fire's area of origin was undetermined and that he saw irregular burn patterns on the concrete floor, some of which were indicative of liquid accelerant. He further testified that he observed three unconnected areas of heavy burn: the mezzanine, the finishing area, and the carpet area. Home Indemnity's own experts, Carter Roberts and John Yust, testified that fire investigators can disagree in good faith about the cause of a fire even though both investigators are competent in their field.

The probative evidence does not establish clearly and convincingly that INS's conduct constituted malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing. Rather, the evidence discloses an imperfect investigation punctuated by misstatements, mistakes, and missteps that constituted a breach of INS's duty to Home Indemnity. However, proof that a tort was committed does not necessarily establish the right to punitive damages. *USA Life One*, 682 N.E.2d at 541. In the final analysis, this case involves a difference in reasonable, professional opinions about the cause and origin of the Cubeco fire. Because there is insufficient evidence that INS's actions were the result of any-

thing more egregious than mere negligence, the imposition of punitive damages is not supported by law. The trial court erred in instructing the jury on punitive damages, and we reverse the portion of the judgment awarding punitive damages to the Lees. *See also USA Life One*, 682 N.E.2d at 542 (reversing denial of summary judgment on punitive damages claim against insurance company where evidence showed a difference in policy interpretation only).[6]

Affirmed as to the compensatory damages for negligence, reversed as to the compensatory damages for breach of contract, and reversed as to punitive damages.

BAKER, J., and ROBB, J., concur.

---

6. INS also raises the issue that the punitive damages were excessive under both state law and the federal constitution. Because we find

that it was error for the trial court to submit the issue of punitive damages to the jury, we need not address this issue.