899 N.E.2d 693 (2009)
BANK ONE, NATIONAL ASSOCIATION, d/b/a Bank One, Appellant-Defendant,
v.
Jeannene SURBER, Appellee-Plaintiff.
No. 29A04-0712-CV-711.
Court of Appeals of Indiana.
January 14, 2009.
*696 Max W. Hittle, Jr., Marc T. Quigley, Libby Y. Mote, Krieg DeVault, LLP, Indianapolis, IN, Attorneys for Appellant.
Douglas D. Church, Martin E. Risacher, Alexander P. Pinegar, Church, Church, Hittle & Antrim, Noblesville, IN, Attorneys for Appellee.

OPINION
DARDEN, Judge.

STATEMENT OF THE CASE
Bank One appeals the trial court's entry of judgment in favor of Jeannene Surber ("Jeannene") and its award of damages.
We affirm in part, reverse in part, and remand.
ISSUES
1. Whether Jeannene released her claims against Bank One by entering into a settlement agreement in a cause of action separate from this action.
2. Whether the trial court's award of damages constituted an abuse of discretion.

*697 FACTS[1]
On September 24, 1997, Jeannene married Thomas Surber ("Thomas"). This was Thomas' third marriage and Jeannene's second. Thomas had two daughters from his first marriage, Jill Duncan and Linda Binion. The couple lived together in a house owned by Thomas.
After Thomas and Jeannene married, Thomas' sister, Polly Armour, made Thomas a joint owner of a savings account ("the Account") she had with Bank One. When Armour died on October 9, 2000, Thomas became the sole owner of the Account.
In January 2002, Thomas began having health problems. Out of concern for Jeannene's financial security, on January 15, 2002, Thomas went to a Bank One branch in Carmel, Indiana where he told Bank One employee Peggy Stone that he wanted to add Jeannene's name to the Account. Stone added Jeannene's name as a joint owner of the Account on Bank One's computer database and gave Thomas a signature card for the Account that Jeannene was to sign. Jeannene signed the signature card later that evening, and Thomas returned the card to Bank One the next day. It is undisputed that between February 2002 and July 2002, bank statements for the Account were sent to and addressed in both Thomas' and Jeannene's names.
On July 8, 2002, Thomas died intestate. On the date of Thomas' death, the Account contained a balance of approximately $425,612. On July 24, 2002, Bank One notified Jeannene that $8,100 from the Account had been transferred to one of Jeannene's checking accounts to cover an overdraft.
Shortly after Thomas' death, Jeannene hired attorney Tanya Overdorf to represent her in her capacity as the personal representative of Thomas' estate. On July 31, 2002, Bank One employee Elaine High told Overdorf that Jeannene was a joint owner of the Account. However, the next day, High informed Overdorf that because a signature card for the Account could not be located, Bank One had determined that Thomas was the sole owner of the Account.
Because Bank One took the position that Thomas was the sole owner of the Account, the funds from the Account became an asset in Thomas' estate rather than Jeannene's sole property. This resulted in substantial litigation between Jeannene and Thomas' daughters over the division of the Account's funds along with the other assets in Thomas' estate. Specifically, Jeannene and Thomas' daughters disputed who should have possession of the marital residence, family photographs, an angelic orb, a coin collection, and an oil painting. Jeannene, by counsel, initiated a claim against Thomas' estate contending that she was entitled to the funds in the Account. Due to this, the probate court appointed a special administrator to examine the Account, prosecute the collection of the Account for the estate, and defend the estate against any claims filed by Jeannene.
On August 5, 2005, Jeannene, by counsel, Thomas' daughters, by counsel, and Thomas' estate, via the special administrator, entered into a voluntary mediated settlement agreement. Bank One did not participate in the mediation, nor was it signatory to the settlement agreement. The settlement agreement resolved all of the disputes between Jeannene and Thomas' *698 daughters regarding the division of Thomas' estate. The agreement specifically provided that "the Estate or Jeannene" was to pay Thomas' daughters $364,000. (Appellant's App. 328). The settlement agreement also contained the following paragraph:
[Jeannene], [Thomas' daughters], and the Estate of Thomas Surber (hereinafter "Signatories"), conditioned upon and for and in consideration of the Court's approval of and the performance of the Compromise, the sufficiency of which is hereby acknowledged, hereby forever release and discharge each other, their heirs, personal representatives, attorneys, agents and assigns, and all other persons or entities who might be liable, none of whom admit any liability to the Signatories, but all dispute any liability to the Signatories, of and from any and all manner of actions, causes of action, suits, accounts, contracts, debts, claims, and demands whatsoever, at law or in equity, and however arising, on or before the date of this release, including but not limited to, all matters asserted, or which could have been asserted, by any of the Signatories in that certain actions pending in the Hamilton Superior Court, State of Indiana, as above entitled under Cause No. 29D01-0207-ES-96.
Id. at 329.
The probate court entered an order approving the settlement agreement on September 2, 2005. The court specifically ordered Bank One to immediately distribute the funds in the Account "to Jeannene R. Surber." Id., at 324. On September 29, 2005, Bank One issued a check payable to Jeannene in the approximate amount of $436,559, which Bank One contends represented the full amount of principal and accrued interest contained in the Account as of that date. Jeannene endorsed the check in her own name and deposited the proceeds into an account opened for Thomas' estate.
While the estate litigation was still on-going, on December 12, 2003, Jeannene filed this action against Bank One alleging claims of negligence and breach of contract for its failure to maintain her name on the Account. A bench trial in this case began on September 24, 2007. During the trial, Overdorf testified regarding Jeannene's damages. She first noted that following Thomas's death, had Bank One recognized Jeannene as a joint owner of the Account, Jeannene would have received a $25,000 spousal allowance and one third of the value of a life estate in any real property, which in this case amounted to $73,984. Jeannene also would have received the total value of her and Thomas' joint property, which was $602,546. This latter figure also included the $425,612 in the Account. Thus, according to Overdorf, but for Bank One's negligence, the total amount Jeannene should have received was $676,546.
Overdorf then testified to the actual amount Jeannene received through the voluntary mediated settlement agreement that resolved Thomas' estate. Jeannene received a $25,000 spousal allowance; $73,984 which represented one third of the value of a life estate in Thomas' real property; one half of the net probate estate, which totaled approximately $119,653; and $176,950, which represented the total value of her and Thomas' joint property for a grand total of $395,587. Subtracted from the $395,587 figure was the $364,000 payment that was made to Thomas' daughters. According to Overdorf, the net amount received by Jeannene, then, was approximately $31,587.
The figure representing one half of the net probate estate was reached by subtracting $93,234 in special administrative fees and attorneys' fees that were paid by *699 the estate. Overdorf testified that, for various factors, all but $5,000 to $7,000 of these attorney fees was due to Bank One's negligence in the designation of Thomas as the sole owner of the Account.
During the trial, Jeannene asserted that she was entitled to prejudgment interest on the funds in the Account from the date of Thomas's death, July 8, 2002, up to the first day of the trial, September 24, 2007. Using the statutory eight percent interest rate provided for in Indiana Code section 24-4.6-1-102, Jeannene calculated that prejudgment interest on the $425,612 in the Account at the time of Thomas's death would total approximately $177,662.
In calculating her total damages, Jeannene took the $676,546 she contended she would have received had Bank One recognized her as the owner of the Account and added to that the $177,662 in prejudgment interest that she asserted she was entitled to. From this figure, Jeannene subtracted the $31,587 she actually received from Thomas' estate to arrive at her total damages, which she alleged were $822,621.
On November 26, 2007, the trial court issued its Findings of Fact, Conclusions of Law and Judgment. The trial court concluded that Bank One acted negligently and breached its contract with Jeannene. The trial court made the following relevant findings of fact and conclusions of law:
Findings of Fact
* * *
38. The amount of money in [the Account] as of the date of [Thomas's] death was Four Hundred Twenty-five Thousand Six Hundred Eleven Dollars and Seventy-six cents ($425,611.76). From August 1st, 2002 forward, [Jeannene] was not able to access, invest, and use these funds to her financial advantage. Bank One offered no evidence to contradict this finding.
39. Because Bank One took the position that [the Account] was an estate asset, [Jeannene's] net share of the probate estate of [Thomas] plus the value of the jointly owned property turned out to be Thirty-one Thousand Five Hundred Eighty-seven dollars and twenty-four cents ($31,587.24). Bank One offered no evidence to contradict this finding.
40. If [the Account] had been maintained in [Jeannene's] name, she would have received Six Hundred Seventy-six Thousand Five Hundred Forty-six dollars ($676,546.00) following the death of [Thomas]. Bank One offered no evidence to contradict this finding.
41. The difference between what [Jeannene] should have received (per Finding 40, herein) and what [Jeannene] actually did receive (per Finding 39, herein)  the difference being caused by Bank One's assertion that [the Account] was not owned by [Jeannene]is Six Hundred Forty-four Thousand Nine Hundred Fifty-eight dollars and seventy-six cents ($644,958.76). Bank One offered no evidence to contradict this finding.
* * *
44. The parties to the Estate of [Thomas] mediated their disputes on August 5, 2005.... Bank One was not a party to the mediation, did not sign it, nor was it defined as a signatory to the settlement agreement. There is no consideration stated in the settlement agreement for any theoretical release of Bank One from liability in this cause. *700 Bank One was, therefore, not released from liability in this cause by the settlement agreement signed by the parties to the Estate. The parties to the Estate of [Thomas] agreed that the funds in [the Account] would be paid to the estate or to [Jeannene], and would then be used to pay estate obligations, in part as defined by their settlement agreement.
* * *
48. At the time of the mediation, the fees for the Special Administrator and attorneys involved on behalf of the various parties involved in the Estate proceedings had reached Ninety-three Thousand Dollars ($93,000). There was no indication that the Estate issues would resolve in short order. It was possible that the Estate might be depleted of its assets if the parties to the Estate litigated [the Account] issue to fruition. [Jeannene], knowing her responsibilities as personal representative of the Estate, agreed to the mediation's term that [the Account] would be paid to the estate. In doing so, [Jeannene] did not intend to nor did she release Bank One from liability for the negligence, breach of contract, and breach of fiduciary duty claims she had previously asserted in this cause.
* * *
49. [Thomas] died on July 8, 2002, and One Thousand Nine Hundred Four days (1904) passed from his death until the date of trial in this matter, September 24, 2007. At the time of his death, [the Account] held $425,611.76. Simple Indiana judgment interest of Eight percent (8%)-from the decedent's date of death  on $425,611.76 is One Hundred Seventy-seven Thousand, Six Hundred Sixty-two Dollars and Twenty-four cents ($177,662.24). The calculation of pre-judgment interest is certain.
Conclusions Of Law
* * *
6. It was reasonably foreseeable that [Jeannene] would be harmed if Bank One did not take the proper steps to safeguard her ownership in [the Account] and to permit her free access to [the Account].
* * *
18. It was reasonably foreseeable, and a natural consequence of Bank One's breach of duty was, that if Bank One refused [Jeannene] access to [the Account], then she would incur financial loss.
* * *
21. Bank One's negligence caused damages to [Jeannene]. [Jeannene] was denied access to a sizeable account. [Jeannene] was not permitted to invest the funds in that account. [Jeannene] was forced to litigate with third parties her rightful ownership of that account. The sum of [Jeannene's] rightful share of the estate of [Thomas] plus her outright ownership in the jointly-owned assets was reduced because of Bank One's negligence.
22. The Court finds that because of Bank One's negligence, [Jeannene] incurred damages amounting to Six Hundred Forty-four Thousand *701 Nine Hundred Fifty-eight dollars and Seventy-six cents ($644,958.76).
* * *
28. The Court finds that because of Bank One's breach of contract, [Jeannene] incurred direct damages amounting to Six Hundred Forty-four Thousand Nine Hundred Fifty-eight dollars and Seventy-six cents ($644,958.76).
29. In a contract claim, prejudgment interest can be awarded if there has been a deprivation of the plaintiffs use of money or its equivalent, and that unless interest is added, the plaintiff cannot be fully compensated for the loss suffered.
* * *
30. Bank One's breach of contract caused [Jeannene] to be deprived access to her own savings account. [Jeannene] will not be fully compensated for her loss if prejudgment interest is not awarded to setoff this deprivation of funds. Bank One had a contract duty to recognize [the Account] as solely owned by [Jeannene] as of the date of [Thomas's] death, July 8, 2002. The amount of funds in [the Account] on that date is clearly ascertainable and is known to be Four Hundred Twenty-five Thousand Six Hundred Eleven Dollars and Seventy-six cents ($425,611.76).
31. [Jeannene] is entitled to prejudgment interest on her breach of contract claim. That interest is calculated on the actual amount in [the Account] as of the date of death. Therefore, on her breach of contract claim, the Court finds that [Jeannene] is entitled to an additional One Hundred Seventy-seven Thousand, Six Hundred Sixty-two Dollars and Twenty-four cents ($177,662.24) as prejudgment interest.
* * *
Judgment
IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that Judgment is entered for [Jeannene] and against the Defendant [Bank One] in the amount of Six Hundred Forty-four Thousand Nine Hundred Fifty-eight dollars and Seventy-six cents ($644,958.76) and interest in the amount of One Hundred Seventy-seven Thousand, Six Hundred Sixty-two Dollars and Twenty-four cents ($177,662.24) for a total Judgment of Eight Hundred Twenty-two Thousand Six Hundred Twenty-one Dollars ($822,621.00) and costs of this action.
(Appellant's App. 9-26) (citations omitted). This appeal ensued.

DISCUSSION
Initially, it is relevant to note that Bank One is principally challenging the trial court's award of damages. It does not challenge the trial court's conclusion that it was negligent and that it breached its contract with Jeannene.
Where, as here, the trial court enters findings of fact and conclusion of law, our standard of review is two-tiered. Tompa v. Tompa, 867 N.E.2d 158, 163 (Ind.Ct. App.2007). First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. Id. "The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them." Id. "A judgment is clearly erroneous when a review of the record leaves us with a firm *702 conviction that a mistake has been made." Id. We do not reweigh the evidence or assess the credibility of witnesses, and we will only consider the evidence most favorable to the judgment. Id.

1. Release of Claims by Entering Settlement Agreement

Bank One contends that Jeannene released her claims against Bank One when she entered the August 5, 2005 settlement agreement that resolved the litigation over Thomas' estate. Bank One asserts that the following language in the settlement agreement supports its position:
[Jeannene], [Thomas' daughters], and the Estate of Thomas Surber (hereinafter "Signatories"), conditioned upon and for and in consideration of the Court's approval of and the performance of the Compromise, the sufficiency of which is hereby acknowledged, hereby forever release and discharge each other, their heirs, personal representatives, attorneys, agents and assigns, and all other persons or entities who might be liable,... of and from any and all manner of actions, causes of action, suits, accounts, contracts, debts, claims, and demands whatsoever, at law or in equity, and however arising, on or before the date of this release....
(Appellant's App. 329)(emphasis added). Bank One argues that it falls under the "all other persons" category and, thus, has been released from any liability it may have had to Jeannene.
Our Supreme Court has previously noted:
A release executed in exchange for proper consideration works to release only those parties to the agreement unless it is clear from the document that others are to be released as well. A release, as with any contract, should be interpreted according to the standard rules of contract law. Therefore, from this point forward, release documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing.
Huffman v. Monroe County Community School Corp., 588 N.E.2d 1264, 1267 (Ind. 1992).
When interpreting a contract, if the language of the contract is unambiguous, the intent of the parties is to be determined by reviewing the language contained within the four corners of the instrument. Estate of Spry v. Greg & Ken, Inc., 749 N.E.2d 1269, 1273 (Ind.Ct.App. 2001). "`A contract is ambiguous only if a reasonable person could find its terms susceptible to more than one interpretation.'" Id. (quoting Dobson v. Citizens Gas & Coke Util., 634 N.E.2d 1343, 1345 (Ind.Ct. App.1994)). "Language that releases `all' people is clear unless other terms in the instrument are contradictory." Id.
Here, the settlement agreement does contain language that purports to release "all other persons or entities who might be liable...." (Appellant's App. 329). The settlement agreement, though, contains other language that contradicts this. First, the introductory paragraph states that the "affected parties to the above captioned matter" are the "undersigned", which only included Jeannene and Thomas' daughters, Jill Duncan and Linda Binion. Id. at 328. This indicates that entities like Bank One that did not participate in or sign the settlement agreement, were not an affected party.
In paragraph five of the settlement agreement, the special administrator of Thomas' estate is directed to prepare "a dismissal with prejudice of the Complaints pending under this cause number." Id. at *703 329. The cause number listed in the caption of the settlement agreement is 29D01-0207-ES-96, which was the cause number for litigation involving Thomas' estate. This paragraph suggests that the signatories to the settlement agreement only intended to resolve those claims made in the estate litigation under cause number 29D01-0207-ES-96.
Similarly, paragraph eight of the settlement agreement specifies that the release only applies to claims "asserted, or which could have been asserted, by any of the Signatories in that certain actions pending in the Hamilton Superior Court, State of Indiana, as above entitled under Cause No. 29D01-0207-ES-96." Id. This again indicates the signatories' intent to limit the release to the pending litigation over Thomas' estate.
Last, the ninth paragraph of the settlement agreement states that "performance of the terms of the Compromise is made and accepted in full accord and satisfaction of ... any and all disputes, that do, or may exist, between the Signatories and for the purpose of terminating all such disputes and associated litigation." Id. Again, the signatories to the settlement agreement were Jeannene, Jill Duncan, and Linda Binion. Bank One did not participate in or sign the settlement agreement. Paragraph nine indicates that the settlement agreement only resolved the disputes between the signatories. Given these contradictory provisions, it is not clear that the signatories to the agreement intended to release any other individuals or entities that were not a party to the agreement.
Additionally, according to the parol evidence rule, extrinsic evidence is not admissible to clarify or modify the terms of a written instrument if the terms of the instrument are clear and unambiguous. Depew v. Burkle, 786 N.E.2d 1144, 1148 (Ind.Ct.App.2003), trans. denied. "However, under the stranger to the contract rule, `the inadmissibility of parol evidence to vary the terms of a written instrument does not apply to a controversy between a third party and one of the parties to the instrument.'" Evan v. Poe & Assocs., Inc., 873 N.E.2d 92, 101 (Ind.Ct. App.2007) (quoting Cooper v. Cooper, 730 N.E.2d 212, 216 (Ind.Ct.App.2000)). Here, we are dealing with a controversy between a third party, Bank One, and a party to the settlement agreement, Jeannene. Thus, we may consider parol evidence. Specifically, we note that Jeannene testified that in entering into the settlement agreement, she did not intend to release Bank One from liability.
Based on the contradictory provisions of the settlement agreement and Jeannene's testimony that she did not intend to release Bank One from liability by executing the settlement agreement, the trial court properly concluded that the settlement agreement did not release Bank One from liability.

2. Damages

Bank One next argues that the trial court's award of damages constituted an abuse of discretion. In reviewing a damages award, we do not reweigh the evidence or judge the credibility of witnesses, and we will reverse an award only when it is not within the scope of the evidence before the finder of fact. Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC, 870 N.E.2d 494, 507 (Ind.Ct.App.2007). A damage award must be supported by probative evidence and cannot be based upon speculation, conjecture, or surmise. Crider & Crider, Inc. v. Downen, 873 N.E.2d 1115, 1118 (Ind.Ct.App.2007).
In this case, the trial court found that Bank One was negligent and *704 that it breached its contract with Jeannene. In a negligence action, the injured party is entitled to damages proximately caused by the tortfeasor's breach of duty. INS Investigations Bureau, Inc. v. Lee, 784 N.E.2d 566, 577 (Ind.Ct.App.2003), trans. denied. "The damages claimed for such a breach must be the natural, foreseeable and proximate consequence of the breach." Id.
"A party injured by a breach of contract is limited in his or her recovery to the loss actually suffered, and he or she may not be placed in a better position than the party would have enjoyed had the breach not occurred." Crider & Crider, 873 N.E.2d at 1118. Generally, the measure of damages for breach of contract is either such damages as may fairly and reasonably be considered as arising naturally from the breach of the contract, or as may be reasonably supposed to have been within the contemplation of the parties at the time they entered into the contract as a probable result of the breach. Rogier v. American Testing and Engineering Corp., 734 N.E.2d 606, 614 (Ind.Ct.App.2000), trans. denied.

A. Set Off
Bank One argues that the trial court erred when it failed to set off its September 29, 2005 payment to Jeannene of the balance of the Account against the damages that were awarded.[2] "Damages are awarded to compensate an injured party fairly and adequately for the loss sustained." INS Investigations Bureau, 784 N.E.2d at 577. "While an aggrieved party must be compensated, he or she should not be placed in any better position." Id. Nor may a party recover twice for the same wrong. Id. As such, payments that are made in partial satisfaction of a claim must be credited against the remaining liability to prevent a double recovery. Myers v. State, 848 N.E.2d 1108, 1110 (Ind.Ct.App. 2006).
Here, the probate court ordered Bank One to distribute the funds in the Account to "Jeannene R. Surber" on September 2, 2005. (Appellant's App. 324). On September 29, 2005, Bank One issued a check payable to Jeannene in the amount of $436,559, which it contends represented the full amount of principal and accrued interest contained in the Account as of that date. Jeannene accepted the check, endorsed it in her own name, and deposited the proceeds into an account opened for Thomas' estate. Bank One argued that it was entitled to a set-off for its September 29, 2005 payment to Jeannene. The trial court rejected this argument and awarded Jeannene $644,959 in damages plus $177,662 in prejudgment interest.
The trial court's judgment in this case ultimately requires Bank One to pay Jeannene the funds in the Account twice. The first payment was made on September 29, 2005, and the second payment is required by the trial court's November 26, 2007 judgment. We have previously stated that "[t]he law disfavors a windfall or a double recovery." Crider & Crider, 873 N.E.2d at 1119. By denying Bank One a set-off for its September 29, 2005 payment to Jeannene, the trial court has given Jeannene a windfall and has placed her in a better position than she would have been in had Bank One not acted negligently and not breached its contract with Jeannene. *705 Therefore, we conclude that the trial court's refusal to award Bank One a set-off for the September 29, 2005 payment constituted an abuse of discretion.
However, Jeannene contends that Bank One is not entitled to a set-off because the September 29, 2005 payment was not to her but to Thomas' estate. The voluntary settlement agreement Jeannene entered into on August 5, 2005 with Thomas' daughters does not specify whether the funds in the Account were to be paid to Jeannene or to Thomas' estate. The probate court ordered Bank One to pay the funds in the Account to Jeannene, making no mention of Thomas' estate. On September 29, 2005, Bank One issued a check payable to Jeannene in the amount of approximately $436,559, which it contends represents the full amount of principal and accrued interest contained in the Account. Jeannene accepted the check, endorsed it in her own name, and deposited the funds into an account opened for Thomas' estate. Once the payment was made, Bank One no longer had any control over what Jeannene did with the funds from the Account. The September 29, 2005 payment was to Jeannene, not Thomas' estate. Thus, Bank One is entitled to a set-off for this payment.
Additionally, we note that Jeannene concedes that Bank One is entitled to at least a partial set-off of $8,100 for the funds from the Account that were transferred into one of her checking accounts on July 24, 2002 due to an overdraft. Taking all of this into consideration, we remand this case so that the trial court can conduct a hearing and recalculate Jeannene's damages. In doing so, the trial court shall award Bank One a setoff of $436,559 for the September 29, 2005 payment plus $8,100 for the July 24, 2002 payment of an overdraft. Bank One, then, is entitled to an initial set-off of $444,659.

B. Prejudgment Interest
Bank One argues that the trial court abused its discretion in its award of prejudgment interest to Jeannene. We review an award of prejudgment interest for an abuse of discretion. Harlan Sprague Dawley, Inc. v. S.E. Lab Group, Inc., 644 N.E.2d 615, 617 (Ind.Ct.App. 1994), trans. denied. An award of prejudgment interest is founded upon the theory that there has been a deprivation of the plaintiff's use of money or its equivalent and that unless interest is added, the plaintiff cannot be fully compensated for the loss suffered. Crawford County Community School Corp. v. Enlow, 734 N.E.2d 685, 692 (Ind.Ct.App.2000), trans. denied. "Prejudgment interest is recoverable not as interest but as additional damages to accomplish full compensation." Id. "Damages in the form of prejudgment interest are warranted in a contract case if the terms of the contract make the claim ascertainable and the amount of the claim rests upon mere computation." Id.
The trial court concluded that Jeannene was entitled to prejudgment interest on her breach of contract claim. The trial court awarded Jeannene prejudgment interest at the statutory rate of eight percent on the balance of the Account at the time of Thomas' death, which was $425,612. The trial court found that Jeannene was entitled to prejudgment interest from July 8, 2002, the date of Thomas' death, to September 24, 2007, the first day of trial. Based on this, the trial court awarded Jeannene $177,662 in prejudgment interest.
Bank One first contends that the trial court erred when it awarded Jeannene prejudgment interest on the balance of the Account based on the statutory rate of eight percent rather than the interest rate provided for in Jeannene's contract *706 with Bank One. Jeannene's contract with Bank One specifies that the interest rate for funds in the Account is 1.5%. The contract does not specifically address the situation presented here, much less detail the interest rate that should be applied to prejudgment interest. Where, as here, the parties have not agreed upon an interest rate, interest shall be calculated at the rate of eight percent. Ind.Code § 24-4.6-1-102. Therefore, the trial court properly awarded Jeannene prejudgment interest at the rate of eight percent.
Bank One also argues that Jeannene is only entitled to prejudgment interest from the date of Thomas' death until September 29, 2005 when it paid Jeannene the balance of the Account. Bank One is correct. Indiana Code section 24-4.6-1-103 provides that prejudgment interest accrues from the date payment is due or demanded until payment is made. Here, payment was due on July 8, 2002 when Thomas died. We have determined that Bank One made payment to Jeannene on September 29, 2005. Jeannene, then, was only entitled to prejudgment interest at the rate of eight percent from July 8, 2002 to September 29, 2005. The trial court abused its discretion by awarding Jeannene prejudgment interest up to September 24, 2007.
On remand, the trial court shall recalculate the amount of prejudgment interest to be awarded to Jeannene. Jeannene should be awarded the prejudgment interest at the rate of eight percent from July 8, 2002 to September 29, 2005. In making this calculation, the trial court should credit Bank One for the accrued interest payment made to Jeannene on September 29, 2005. The interest Bank One paid to Jeannene on September 29, 2005 should be subtracted from the total prejudgment interest award. The trial court should also adjust the prejudgment interest award for the $8,100 set-off Bank One is entitled to for the July 24, 2002 payment made for an overdraft on one of Jeannene's accounts.

C. Attorney Fees
Bank One argues the trial court abused its discretion in awarding Jeannene attorney fees. We review an award of attorney fees for an abuse of discretion. Hill v. Davis, 850 N.E.2d 993, 996 (Ind.Ct.App.2006). "An abuse of discretion occurs when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court." Id.
The trial court did not make a specific finding regarding the total amount of attorney fees it was awarding to Jeannene. Instead, the trial court accepted Jeannene's calculation of damages and concluded that she should be awarded $644,959 in damages. Within the $644,959 figure, Jeannene asserted that she incurred $93,234 in attorney fees. However, the majority, if not all, of these fees appears to have been incurred in litigating Thomas' estate.
Bank One contends that the trial court erred in personally awarding Jeannene damages that compensated her for attorney fees that were incurred in the litigation of Thomas' estate because those fees were ultimately paid for by the estate. Bank One argues that Jeannene is only entitled to those attorney fees she personally incurred. Jeannene argues that she can be compensated for the attorney fees incurred in the estate litigation under the third party litigation exception adopted by this Court in Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co., 837 N.E.2d 1032 (Ind.Ct.App. 2005).
Jeannene is correct that in Masonic Temple this Court adopted the *707 third party litigation exception. Id. at 1039. Under that exception:
When the defendant's breach of contract caused the plaintiff to engage in litigation with a third party to protect its interests and such action would not have been necessary but for defendant's breach, attorney fees and litigation expenses incurred in litigation with a third party may be recovered as an element of plaintiff's damages from defendant's breach of contract.
Id. The elements of this exception are: (1) the plaintiff became involved in a legal dispute because of the defendant's breach of contract or other wrongful act; (2) the litigation was with a third party and not the defendant; and (3) the fees were incurred in the third-party litigation. Id.
Here, Jeannene became involved in a legal dispute with Thomas' daughters during the litigation of Thomas' estate over possession of the funds in the Account. Had Bank One recognized Jeannene as the sole owner of the funds in the Account after Thomas' death, Jeannene would not have become involved in this legal dispute. Thus, Jeannene can satisfy the first two elements of the third party litigation exception.
However, it is not clear that Jeannene has proven the third element of the exception. Thomas' estate was contested by his daughters. In addition to disputes about who should have possession of the funds in the Account, Jeannene and Thomas' daughters disputed who should have possession of the marital residence, family photographs, an angelic orb, a coin collection, and an oil painting. The trial court found that "[a]t the time of the mediation, the fees for the Special Administrator and attorneys involved on behalf of the various parties involved in the Estate proceedings had reached Ninety-three Thousand Dollars ($93,000)." (Appellant's App. 19). Thus, fees were incurred during the litigation over Thomas' estate. The trial court, though, did not state whether Jeannene personally incurred any of these fees or what portion of any fees personally incurred by Jeannene were the direct result of her dispute with Thomas' daughters over the funds in the Account.
This Court has previously stated that "the relevant inquiry is whether a party has incurred attorney fees." Harco, Inc. of Indianapolis v. Plainfield Interstate Family Dining Assocs., 758 N.E.2d 931, 944 (Ind.Ct.App.2001). Before the trial court could award Jeannene attorney fees for the estate litigation, it was incumbent upon it to find that Jeannene personally incurred attorney fees in that litigation and the total amount of fees incurred.
Additionally, Bank One is only liable for those damages that were the natural, foreseeable, and proximate consequence of its negligence. INS Investigations Bureau, Inc., 784 N.E.2d at 577. Bank One could not have foreseen litigation over matters other than the funds in the Account. Furthermore, litigation over possession of the marital residence, family photographs, an angelic orb, a coin collection, and an oil painting was not a proximate consequence of Bank One's negligence as these matters likely would have been disputed at Thomas' death regardless of Bank One's actions.
On remand, the trial court shall determine whether, as a direct result of Bank One's negligence, Jeannene personally incurred any attorney fees during the litigation of Thomas' estate and the amount of those fees. Fees incurred by Jeannene as the personal representative of Thomas' estate are chargeable to the estate and were not personally incurred by Jeannene. However, if Jeannene personally incurred attorney fees in the estate litigation, then *708 the third party litigation exception applies, and Jeannene may recover those attorney fees she personally incurred in the estate litigation that were the direct result of her dispute with Thomas' daughters over ownership of the funds in the Account.
We also note that the trial court did not enter a finding regarding attorney fees that Jeannene personally incurred in this action, lower cause number 29D01-0312-PL-1035. Therefore, upon remand, the trial court may consider evidence of Jeannene's attorney fees in this action at the trial court level, assess whether an award of attorney fees is warranted and determine the amount.
Affirmed in part, reversed in part, and remanded.
BARNES, J., and CRONE, J., concur.
NOTES
[1] We heard oral argument in this case on November 10, 2008 in Indianapolis. We commend counsel for their able presentations. For ease of computation, the figures in our opinion have been rounded off to the next whole dollar amount with the exception being that of the trial court's Findings of Fact, Case Law, and orders.
[2] We think it significant to note Bank One's failure to seek interpleader under Indiana Trial Rule 22. Had Bank One sought interpleader, it could have deposited the funds of the Account with the probate court. Bank One then would have been discharged from liability and not incurred the substantial attorney fees it no doubt has incurred in litigating this action.