Mark A. **KINSEL,** Appellant–
Defendant,

v.

Robert **SCHOEN** and Delores Schoen,
Appellees–Plaintiffs.

No. 25A05–0910–CV–615.

Court of Appeals of Indiana.

Sept. 9, 2010.

Christopher D. Morris, Lennon, Miller, O'Connor & Bartosiewicz, Kalamazoo, MI, Attorney for Appellant.

John R. Hillis, Hillis, Hillis, Rozzi & Knight, Logansport, IN, Attorney for Appellees.

### OPINION

BAKER, Chief Judge.

The defendant-neighbor's manmade pond leaked water, flooded the plaintiffs' septic drainage field, and caused the system to fail. Notwithstanding this evidence, the local Board of Health pursued an action against the plaintiffs and compelled them to replace the failed septic system. In light of these circumstances, we hold, among other things, that the trial court properly ordered the defendant to reimburse the plaintiffs-landowners for attorney's fees that they paid to defend themselves in the Board of Health proceedings. We also conclude that the trial court did not abuse its discretion in ordering the defendant to reimburse the plain-

tiffs for amounts that they paid to an expert hydrologist who conducted various tests on the property in an effort to establish the cause of the septic drainage field flooding.

Appellant-defendant Mark Kinsel appeals the trial court's judgment in favor of plaintiffs-appellees Robert and Delores Schoen (the Schoens) on their claims against him for nuisance, trespass, and negligence. Specifically, Kinsel argues that the trial court erred in not applying the common enemy doctrine, the damage award was improper because the Schoens failed to mitigate their damages, and that the trial court erred in ordering him to pay the Schoens' attorney's fees that they incurred in prior proceedings and the expert witness fees that the Schoens paid in the instant case. Concluding that the trial court's damage award was proper and finding no other error, we affirm.

## FACTS

The Schoens moved into a residence near Rochester in 1957. In 1991, they installed a new septic system that functioned normally until the spring of 2006.

In July 2005, Kinsel, who lived next door to the Schoens, constructed a private pond on the east side of his property. Kinsel's pond was about twenty feet from the Schoens' property boundary line and thirty feet from their septic drainage field. The pond measures twenty-one feet by thirty-seven feet and is approximately five feet deep. Although Kinsel was required to obtain a permit prior to constructing the pond, he failed to do so.

In April 2006, the Schoens noticed that their septic drainage field was flooded with "clear water." Tr. p. 20, 35. The flooding continued for some time, and several weeks later, the Schoens asked Kinsel about his pond and the flooding of their discharge field. Kinsel told the Schoens that he "wondered where the water in the pond was going." Id. at 23.

At some point, the Fulton County Health Department (Health Department) became involved. On May 17, 2006, Kinsel received a letter from the Health Department informing him that his pond was causing the septic system on his property and on the Schoens' land to malfunction. The letter also referred to Section 410 I.A.C. 6–8.1–31 and Fulton County Ordinance 101992, suggesting that Kinsel install a liner in the private pond to prevent the water level from affecting the septic disposal systems. However, Kinsel did not place a liner in the pond to stop the water leakage.

On May 24, 2006, Kinsel received a second letter from the Health Department following a conversation that he had had with one of its representatives. The letter acknowledged that Kinsel would aerate the pond and suggested that Kinsel install a rubber liner if the pond continued to leak. It was further suggested that Kinsel should add some "diking to provide adequate retention of water runoff." Pl. Ex. 26. However, Kinsel took none of these steps.

Sometime during the summer of 2006, the Health Department inspected the Schoens' septic system and concluded that the system was "in failure" because of the flooding and that the Schoens could no longer use their system in that condition. Tr. p. 28–30. It was also observed that the water in the drainage field was clear and not "sewage effluent." Id. at 35.

The Health Department cited the Schoens for the failed system, and in preparation for a hearing before the Health Department, the Schoens retained legal counsel at a cost of $2960. At the conclusion of the hearing, the Health Depart-

ment concluded that the Schoens should install a new septic unit. *Id.* at 132.

In the meantime, the Schoens were under a "pumping order" and had to clear out the septic system before it could be used. *Id.* at 29, 121. For approximately one year, the Schoens used a Laundromat and the restroom facilities at a nearby McDonald's restaurant. The Schoens also bathed at their children's homes.

Also during this time, the drainage field continued to flood when Kinsel's pond was at the high water mark. During the summer months—or when Kinsel did not refill the pond and there was little rain—the Schoens' septic system was usable and their drainage field did not flood.

On July 13, 2007, the Schoens filed a complaint for damages and injunctive relief against Kinsel, alleging negligence, nuisance, and trespass. The Schoens claimed that the water from Kinsel's pond was flooding the septic drainage field. The Schoens also alleged that this water was the direct cause of the septic system's failure and was the basis for the Schoens having to construct a new system. Thus, the Schoens sought damages for the new septic system, additional costs incurred in the installation of the new septic system, and attorney's fees for what they paid for representation before the Health Department and the Fulton Circuit Court. The Schoens also sought to recover the fees that they paid to the Health Department and expert witness fees that they had incurred.

Prior to trial, the Schoens retained hydrologist John Mundell in Indianapolis to conduct various tests of the area surrounding the pond, especially towards the direction of the Schoens' property and septic field. Mundell concluded that the water from Kinsel's pond was "flowing, sub-surface, out from the pond." Tr. p. 63. It was determined that the water flowed in an easterly and northeasterly direction toward the Schoens' property and entered the drainage field of their septic system.

Following the Board of Health litigation, the case proceeded to the Fulton Circuit Court. The Schoens again retained legal counsel for that hearing and paid their attorney $2884.25. On March 26, 2008, the Fulton Circuit Court affirmed the Board of Health's ruling and ordered the Schoens to pay $500 of the Board of Health's attorney's fees. Moreover, the Schoens were ordered to install the new septic system within thirty days and maintain pump and haul requirements until the installation was complete. As a result, in April 2008, the Schoens paid Nelson Well Drilling (Nelson), a landscaping firm, and two electrical firms, a total of approximately $14,000 for the system and related expenses.

On January 23, 2009, a bench trial commenced on the Schoens' claims against Kinsel. On August 6, 2009, the trial court entered findings of fact and conclusions thereon, determining that Kinsel was liable to the Schoens for nuisance, trespass, and negligence. Kinsel was also ordered to abate the nuisance. The trial court found, among other things, that

16. The [Schoens] retained the services of a hydrologist, John H. Mundell, ... Mundell concluded and opined that the water from [Kinsel's] pond significantly affected the area ground water levels at the Schoen property and has specifically affected ground water levels in the area of the septic system drain field that has been taken out of service.

17. Mundell's *Hydrogeologic Investigation* included the following:

   a. The use of eight piezometers;

   b. Controlled hydro geologic tests done over several days;

c.  Closely monitoring the water level of the Defendant's pond;

d.  Use of pressure transducers installed at the pond monitoring point in conjunction with the eight (8) piezometers.

18.  The Defendant retained the services of a Shane L. McBurnett. Mr. McBurnett conducted an "assistance request information for soil water morphology (characteristics)." Shane L. McBurnett is not a hydrologist but a soil scientist and his report concerns the characteristics of the soil. Mr. McBurnett's report of August 30, 2007 ... came to the conclusion that the pond appears to be losing water. Mr. McBurnett dug three pits on the west, north and east side of the pond of the Defendant's. Pit 1, which is on the east side of the pond and immediately west of the Schoen property and septic system, had water in the pit.

19.  Both Mundell and McBurnett agree that the pond was losing water.

20.  Defendant's expert McBurnett stated that the use of the piezometers and pressure transducers were better in measuring the underground water flow from the pond than the digging of pits.

Appellant's App. p. 14.

The trial court then determined that the common enemy doctrine did not apply in this instance and that Kinsel's construction of the pond without a permit constituted a common nuisance. Also, the flow of water onto the Schoens' property from Kinsel's pond amounted to trespass, and the trial court found that Kinsel is liable "for all of the natural and proximate consequences resulting from the water flowing from the pond onto the land owned by the [the Schoens]." *Id.* at 18.

The trial court also observed that Kinsel admitted that the pond was losing water and had sufficient notice from the County and the State that his pond was most probably the cause of the problems encountered by the Schoens and the septic system/drainage field. Also, because Kinsel's pond was constructed and maintained too close to the Schoens' septic field, the trial court determined that Kinsel was negligent for failing to "take any action to prevent the water from the pond infiltrating the Plaintiff's septic system and drainage field." *Id.* at 19.

Finally, the trial court determined that under the "Third Party Litigation Exception, the Plaintiffs are entitled to be reimbursed for their attorney fees incurred by [counsel's] representation of the [the Schoens] before the [Board of Health] and [counsel's] fees incurred by representation of the Plaintiffs before the Fulton Circuit Court." *Id.* at 19–20. In defending against the Board of Health litigation, the Schoens incurred attorney's fees in the amount of $2,960. The Schoens also paid counsel $2,284.25 in attorney's fees in the Fulton Circuit Court proceedings.

The trial court awarded the Schoens a total of $34,087.22 in damages, which included the amounts that they paid to various septic companies, the Laundromat, the expenses associated with installing the new septic system, and the attorney fees that they incurred in the previous proceedings. It is also implicit in the judgment that the trial court ordered Kinsel to pay $8,067.97 in expert witness fees that the Schoens paid to Mundell in this litigation.

The trial court also ordered Kinsel to abate the nuisance. More specifically, Kinsel was ordered to

Fill in said pond with dirt to a condition that it existed prior to excavation of said pond. If the Defendant wishes to re-excavate the pond, he is required to apply for a permit that is appropriate

under the current City/County Ordinances.

Kinsel filed a motion to correct error that the trial court subsequently denied. He now appeals.

## DISCUSSION AND DECISION

### I.  Standard of Review

██ When reviewing findings of fact and conclusions thereon entered pursuant Indiana Trial Rule 52(A), we apply a two-tiered standard of review. *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind.2009). First, we determine whether the evidence supports the findings. *Id.* Second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

### II.  Kinsel's Claims

### A.  Common Enemy Doctrine

██ Kinsel first claims that the judgment must be set aside because the trial court erroneously concluded that the common enemy doctrine does not apply in this instance. Kinsel asserts that the testimony demonstrated that the Schoens' claim "is based on an overabundance of natural water from snowmelt, rainwater, surface water, and groundwater entering his property." Appellant's Br. p. 17. As a result, Kinsel maintains that because the evidence established that it was "natural water" that was flowing onto the Schoens' property, the common enemy doctrine, which recognizes that "all property owners hold dominion over their property with respect to the control of water," applies and the judgment cannot stand. *Id.*

██ In resolving this issue, we initially observe that water classified as surface water is governed by the common enemy doctrine. *Argyelan v. Haviland,* 435 N.E.2d 973, 976 (Ind.1982). As our Supreme Court observed:

In its most simplistic and pure form the rule known as the "common enemy doctrine," declares that surface water which does not flow in defined channels is a common enemy and that each landowner may deal with it in such manner as best suits his own convenience. Such sanctioned dealings include walling it out, walling it in and diverting or accelerating its flow by any means whatever.

*Id.* at 975. The common enemy doctrine may apply regardless of the form of action brought by the plaintiff, that is, regardless of whether the plaintiff asserts his claims as an action for negligence, trespass, or nuisance. *Luhnow v. Horn,* 760 N.E.2d 621, 632 (Ind.Ct.App.2001). However, the common enemy doctrine applies only to surface water. *Trowbridge v. Torabi,* 693 N.E.2d 622, 627 (Ind.Ct.App.1998). Thus, if the water in this case is characterized as surface water, then the common enemy rule may apply to preclude the Schoens' claims for damages. *Id.* at 628.

██ In discussing the concept of "surface water," we recognized in *Trowbridge* that

As distinguished from the waters of a natural stream, lake, or pond, surface waters are such as diffuse themselves over the surface of the ground, following no defined course or channel, and not gathering into or forming any more definite body of water than a mere bog or marsh. They generally originate in rains and melting snows[. . . .] Water derived from rains and melting snows that is diffused over surface of the ground [is surface water], and it continues to be such and may be impounded

by the owner of the land until it reaches some well-defined channel in which it is accustomed to, and does, flow with other waters, or until it reaches some permanent lake or pond, whereupon it ceases to be "surface water" and becomes a "water course" or a "lake" or "pond," as the case may be.

*Id.* at 627. Put another way, water from falling rains or melting snows that is diffused over the surface of the ground or which temporarily flows upon or over the surface as the natural elevations and depressions of the land may guide it but which has no definite banks or channel, is surface water. *Kramer v. Rager,* 441 N.E.2d 700, 705 (Ind.Ct.App.1982).

In this case, the evidence established that the water at issue is sub-surface water that leaked from Kinsel's private pond. In fact, both parties and their experts testified that the pond was leaking water. Pl. Ex. 9, Tr. p. 23, 208. The experts also testified that sub-surface water was "radiating out" from Kinsel's pond. Tr. p. 104, 209. And Mundell—the Schoens' expert witness—testified that his tests on the property revealed that sub-surface water was flowing from Kinsel's private pond to the Schoens' septic drainage field. Pl. Ex. 9.

In light of this testimony, it is apparent that the Schoens established that the flooding to their septic field was not caused by surface water. Rather, the flooding was caused by Kinsel's leaking pond. Therefore, the trial court correctly determined that the common enemy doctrine does not apply in this instance and that Kinsel may be held liable to the Schoens under nuisance, trespass, and/or negligence theories.

### B. Damages

Kinsel also argues that the damage award must be set aside. Specifically, Kinsel argues that the Schoens failed to mitigate their damages regarding the replacement of the septic system when the evidence showed that perimeter drainage tiles could have been placed on the property at a much lower cost.

The principle of mitigation of damages addresses when "conduct by an injured party aggravates or increases the party's injuries." *Wiese–GMC, Inc. v. Wells,* 626 N.E.2d 595, 599 (Ind.Ct.App. 1993). It is the defendant's burden to demonstrate that the plaintiff has failed to exercise reasonable care to mitigate postinjury damage and the defendant must prove that the plaintiff's failure to exercise reasonable care caused the plaintiff to suffer an identifiable item of harm not attributable to the defendant's negligent conduct. *Willis v. Westerfield,* 839 N.E.2d 1179, 1188 (Ind.2006). In other words, it is Kinsel's burden to show that the Schoens' unreasonable conduct as it pertains to the flooding of their drainage field has increased the harm, and if so, by how much.

Here, Kinsel failed to identify any specific remedy and cost of that remedy as an alternative to putting in a new septic system. Although McBurnett offered some testimony that installing tiles around the Schoens' drainage field might have helped the problem, he offered no specifics about installation and cost. Moreover, McBurnett did not know if his proposal "would have helped or not." Tr. p. 177. When considering this testimony, it is apparent that Kinsel failed to satisfy his burden of presenting an alternative to a new septic system.

Finally, we note that the Schoens were under a Board of Health and Fulton Circuit Court order to install the new septic system. In essence, the Schoens had no choice but to install the system. As a result, Kinsel's argument that the award

must be set aside because the Schoens failed to mitigate their damages fails.

### C. Attorney's Fees and Expert Witness Fees

■ Finally, Kinsel argues that the trial court erred in ordering him to pay the Schoens' attorney's fees that they incurred in the Board of Health litigation, the attorney's fees that the Schoens were ordered to reimburse to the Board of Health, and the fees that the Schoens paid to Mundell. Specifically, Kinsel maintains that there were no grounds to support such an award.

■ In resolving this issue, we initially observe that Indiana follows the "American Rule," under which each party is ordinarily responsible for paying his or her own legal fees in the absence of a statutory provision, a specific finding of frivolous litigation, or an agreement. *Barrington Mgmt. Co. v. Draper Family Ltd.*, 695 N.E.2d 135, 142 (Ind.Ct.App.1998). Also, in *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, we recognized a third party litigation exception with regard to the award of attorney's fees. More specifically, the elements of that exception are

(1) The plaintiff became involved in a legal dispute because of the defendant's breach of contract or other wrongful act; (2) the litigation was with a third party and not the defendant; and (3) the fees were incurred in the third-party litigation.

837 N.E.2d 1032, 1039 (Ind.Ct.App.2005); *see also Bank One, Nat. Ass'n. v. Surber*, 899 N.E.2d 693, 707 (Ind.Ct.App.2009), *trans. denied.*

■ On appeal from an award of attorney's fees, we apply the clearly erroneous standard to factual determinations, review legal conclusions de novo, and determine whether the decision to award fees

in the amount of the award constituted an abuse of the trial court's discretion. *Inlow v. Henderson*, 804 N.E.2d 833, 839 (Ind.Ct. App.2004). An abuse of discretion occurs when the trial court's decision is clearly against the logic of the facts and circumstances before it. *Dempsey v. Carter*, 797 N.E.2d 268, 275 (Ind.Ct.App.2004).

In its findings, the trial court determined that

Under the "Third Party Litigation Exception" the Plaintiffs are entitled to be reimbursed for their attorney fees incurred by Chris Lee's representation of the Plaintiffs before the Fulton Circuit Court. The Plaintiffs meet the criteria for the "Third Party Litigation Exception" in that the Plaintiffs became involved in a legal dispute because of the Defendant's wrongful act; (putting in the pond without a permit) and failure to properly construct and maintain his pond; 2. The litigation was with a Third Party (the Fulton County Board of Health) and not the Defendant; 3. The fees were incurred in the third party litigation.

Appellant's App. p. 19–20.

As the trial court correctly observed in its findings, Kinsel failed to secure a proper permit to construct his pond. Tr. p. 147. The pond water migrated to the Schoens' septic distribution system and caused it to flood, thus resulting in the septic system's failure. The Schoens incurred and paid attorney fees amounting to $5,844.25, in defending the actions before the Board of Health and in the Fulton Circuit Court. *Id.* at 48–50, Pl. Ex. 22, 23. Also, as noted above, the Schoens were ordered to reimburse the Board of Health in the amount of $500 for the attorney's fees that *it* expended in those proceedings.

In our view, the trial court properly applied the criteria in *Masonic Temple* and *Surber* regarding the Schoens' recov-

ery of the attorney's fees they had paid in the earlier proceedings. Thus, the trial court properly included these amounts in the damage award.

■ Similarly, we note that while Kinsel maintains that he should not have been compelled to reimburse the Schoens for the fees that they had paid to Mundell, our trial courts " 'have the inherent power to assess expenses for consequential damages suffered by the opposing side, including attorneys' fees and witness expenses....' " *Allied Property and Cas. Ins. Co. v. Good,* 919 N.E.2d 144, 153 (Ind.Ct.App.2009), *trans. denied,* (quoting *Turner v. Roman Catholic Diocese of Burlington, Vermont,* 987 A.2d 960, 969 (Vt. 2009)). When considering the circumstances here, it follows that ordering Kinsel to pay the Mundell fees was proper for the same reasons discussed above regarding the attorney fee award. In other words, the damages and the attorney's fees that the trial court awarded to the Schoens resulted from the direct and proximate cause of Kinsel's pond water migrating underground to flood the Schoens' drainage field that caused the septic system's failure. As a result, we conclude that the trial court's damage award was proper.

The judgment of the trial court is affirmed.

NAJAM, J., and MATHIAS, J., concur.